570 P.2d 744

Keith A. EASTIN and Rosemary Eastin, husband and wife, Petitioners,

v.

The Honorable Robert C. BROOMFIELD, Presiding Judge of the Maricopa County Superior Court, the Honorable Rufus C. Coulter, Jr., Judge of the Maricopa County Superior Court, Robert R. Mills, William S. Weast, D. O., and Scottsdale Family Physicians, Ltd., an Arizona Corporation and William R. Gerchick, William R. Gerchick, personally and individually, Real Parties In Interest, Respondents.

No. 13114.

Supreme Court of Arizona, In Banc.

Sept. 27, 1977.

578

Kenneth Rosengren and Timothy W. Evens, Phoenix, for petitioners.

Burch, Cracchiolo, Levie, Guyer & Weyl, P. A. by Barry A. MacBan, Phoenix, for respondents William R. Gerchick, D. O. and Scottsdale Family Physicians, Ltd.

Snell & Wilmer by Edward Jacobson and Shyrl R. Nielsen, Lewis & Roca by Walter Cheifetz, Phoenix, Brief Amici Curiae for The Arizona Medical Association, Inc. and The Arizona Hospital Association.

Bruce E. Babbitt, Atty. Gen., by Fred W. Stork, Asst. Atty. Gen., Phoenix, Attorneys for Arizona Joint Underwriting Plan.

Snell & Wilmer by John Bouma, Phoenix, Attorneys for Mutual Insurance Company of Arizona.

Fennemore, Craig, von Ammon & Udall by R. C. Mitten and Ruth V. McGregor, Phoenix, Brief Amicus Curiae for Truck Insurance Exchange.

CAMERON, Chief Justice.

We accepted jurisdiction of this petition for special action to consider the constitutionality of the medical liability review panels as provided by A.R.S. §§ 12–567, et seq. In addition to the constitutionality of the statute, we must also consider whether the trial judge was within his discretion in refusing to allow a medical doctor to testify as to the degree of professional skill required by an osteopathic doctor in the prescribing of certain drugs to a patient, and whether the Presiding Judge of the Superior Court was correct in refusing to submit the case to an entirely new panel after the disqualification of one of the members of the first panel.

The facts necessary for a determination of this matter are as follows. Petitioners, Keith A. Eastin and Rosemary Eastin, husband and wife, brought an action against Dr. William R. Gerchick and Scottsdale Family Physicians, Ltd., alleging failure to exercise reasonable care in the administration of the drug Talwin to Keith Eastin. The matter was submitted to a medical review panel as provided by A.R.S. §§ 12–

561 to 569. This Act, Chapter 5.1 of Title 12, was enacted in February of 1976 and provides for the creation of medical liability review panels consisting of a superior court judge, one attorney, and one physician or licensed health care provider in the same field of health care as the defendant (§ 12–567[B]). Upon the filing of a medical malpractice action, the matter must be referred to this medical liability review panel within 10 days after the expiration of the time for defendant's answer (§ 12–567[A]). The matter is then submitted to the panel under such procedural rules as established by the Supreme Court, but with relaxed rules of procedure (§ 12–567[D]). After hearing, the panel files a decision finding either for the plaintiff or for the defendant (§ 12–567[G]).

If either party rejects the decision of the panel, the plaintiff may then proceed with litigation in the Superior Court (§ 12–567[H]). However, if he does proceed, he must post a $2,000 bond secured by cash or its equivalent, and if such bond is not posted before the plaintiff proceeds, the action shall be dismissed (§ 12–567[I]). The same is true of the defendant. If he refuses to accept the recommendations of the panel and does not file the bond, the matter shall proceed in a default manner (§ 12–567[J]). § 12–568 provides for a review of the attorney's fees in a health care action, and § 12–569 provides for the non-admissibility at a subsequent trial of evidence of medical malpractice insurance by a licensed health provider. § 12–567[M] provides that the conclusions of the panel may be admitted into evidence, but the panel members themselves may not be called to testify as to the merits of the case, and the jury shall be instructed that the conclusion of the panel shall not be binding but should be accorded such weight as they choose to give it. § 12–565 abolishes the collateral source rule.

At the hearing of the panel, the petitioners called a Dr. John Palmer as an expert witness. Dr. Palmer possessed a Bachelor's, Master's, and Doctor's degrees in Pharmacology as well as a Doctor's degree in Medicine. Dr. Palmer is a licensed internist in Arizona and an Assistant Professor of Internal Medicine at the University of Arizona Medical School. Because the defendant Dr. Gerchick is a Doctor of Osteopathy and Dr. Palmer is a Doctor of Medicine, the trial court would not allow Dr. Palmer to testify as to the standard of care required of Dr. Gerchick in the administration of drugs.

Also at the first hearing, it appeared that the medical member of the review panel, a Doctor of Osteopathy, had been suspended from the practice of osteopathic medicine for three months for the abusive and unprofessional prescription of narcotic drugs and was on probation at the time of the hearing. The doctor was excused, but instead of starting over with a new panel as petitioner requested, the Presiding Judge of Maricopa County appointed a new medical member and proceeded with the hearing.

From these rulings the petitioners brought a petition for special action which also questions the constitutionality of the Act.

## A. CONSTITUTIONALITY OF THE ACT

Petitioners contend that the Act is unconstitutional for the following reasons:

1. The medical review panels violate the petitioners' right to trial by jury.
2. The introduction of the panel's finding at the subsequent trial is an impermissible comment on the evidence by the judge.
3. The medical review panel usurps the judicial function of the court.
4. The medical review panel denies equal protection of the laws.
5. The abolition of the collateral source rule is a "special law" in violation of Arizona Constitution, Art. IV, Part 2, § 19; is a limitation on damages contrary to Arizona Constitution, Art. II, § 31 and Art. XVIII, § 6; and also is a denial of due process and equal protection of the laws.
6. The requirement of a $2,000 cost bond is a denial of the equal protection of the laws.

■ At the outset it should be noted that there is a strong presumption supporting the constitutionality of a legislative enactment and the party asserting its unconstitutionality bears the burden of overcoming the presumption. *State v. Krug,* 96 Ariz. 225, 393 P.2d 916 (1964); *Landgraff v. Wagner,* 26 Ariz.App. 49, 546 P.2d 26 (1976).

### 1. *Right to trial by jury.*

■ Petitioners contend that A.R.S. § 12–567, which requires that the party submit his case first to the medical liability review panel and then permits the introduction of their findings to the jury, violates their right to trial by jury as guaranteed by Art. II, § 23 of the Arizona Constitution.

The Act provides that upon the filing of a medical malpractice action the matter shall be referred to a panel for its review. The panel is to find either for the plaintiff or for the defendant on each claim presented, and by the terms of A.R.S. § 12–567(M), its conclusions are admissible in any subsequent trial on the matter. A.R.S. § 12–567(M) further provides:

"Parties may, in the opening statement or argument to the court or jury, comment on the panel's conclusion in the same manner as any other evidence introduced at trial. Panel members may not be called to testify as to the merits of the case. The jury shall be instructed that the conclusion of the panel shall not be binding but shall be accorded such weight as they choose to give it."

We do not agree that this provision violated the petitioners' right to trial by jury. Once the panel has considered the evidence and a decision has been rendered, either party is free to proceed to trial and present his case to a jury. A.R.S. § 12–567(H). The jury remains the final arbiter of the issues raised and the facts presented. The statute does not take away the right of the party to have the matter finally and fully determined by the jury.

Petitioners further contend that no jury will be able to objectively evaluate the conclusion reached by the panel or to follow the court's instructions as to how much weight they are to accord such finding, and that, in effect, this procedure violates the plaintiffs' right to trial by jury. Again, we do not agree.

In *Meeker v. Lehigh Valley R. R. Co.,* 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915), the United States Supreme Court rejected an assertion similar to the one made by petitioners here. In that case the court held that a provision permitting the introduction of the prior findings and order of the Interstate Commerce Commission as prima facie evidence of facts contained therein in a civil action by a shipper against a defendant carrier, does not violate the right to trial by jury. In reaching that conclusion, the court said:

"It is also urged, as it was in the courts below, that the provision in § 16 that, in actions like this, 'the findings and order of the Commission shall be *prima facie* evidence of the facts therein stated' is repugnant to the Constitution in that it infringes upon the right of trial by jury and operates as a denial of due process of law.

"This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either the court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents." 236 U.S. at 430, 35 S.Ct. at 335, 59 L.Ed. at 657. See also *Ex Parte Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920) and *Comiskey v. Arlen,* 55 A.D.2d 304, 390 N.Y.S.2d 122 (1976).

In *Meeker,* supra, the decisions of the commission were prima facie evidence of facts alleged. In the instant case, the finding of the panel is merely evidence which the jury may reject or accept as the case may be.

Also, while the Arizona Act does not permit the members of the panel to be called to testify, that in no way precludes either party from impeaching the panel's conclu-

sion by competent evidence. Neither does the Act prevent a party from showing that relevant evidence for whatever reason was not, in fact, presented to the panel. In essence, the panel's finding constitutes an expert opinion which the jury may hear, evaluate, accept or reject just as it would any other expert opinion.

We are aware that the Ohio court in *Simon v. St. Elizabeth Medical Center,* 3 Ohio Op.3d 164, 355 N.E.2d 903 (C.P.1976) held that the introduction of the decision of a panel similar to our own so substantially reduces a party's ability to prove his case as to deny him the right to a trial by jury. However, we do not agree with that conclusion.

We note first that under the Ohio statute there construed not only could the panel's decision be introduced, but, in addition, either party could call the individual arbitrators to testify. This procedure enabled the prevailing party to bolster the panel's decision by testimony at trial and in our view distinguishes that case from the one at bar. Moreover, we believe, as did the court in *Halpern v. Gozan,* 85 Misc.2d 753, 381 N.Y. S.2d 744 (Sup.Ct.1976), that if the trial court properly instructs the jury they will perform their role as the exclusive finder of fact.

■ Petitioners, however, further contend that the procedure violates Art. XVIII, § 5 of the Arizona Constitution which provides as follows:

"Section 5. The Defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

Assuming that the panel could find for the defendant based upon plaintiff's contributory negligence, it is petitioners' contention that the medical liability review panel unconstitutionally invades the province of the jury to alone decide the issue of contributory negligence.

A.R.S. § 12–567(G) provides that the panel's finding is to be stated either as:

"1. 'After considering all evidence presented to the panel, we find for the plaintiff'; or

"2. 'After considering all evidence presented to the panel, we find for the defendant'."

Such a finding may or may not be based upon an application of the law of contributory negligence. We find nothing in the procedures established by § 12–567 that takes from the jury its power to apply the defense or not as it sees fit. The jury, of course, may be instructed as to the law of contributory negligence just as it would in any other case and the final determination on that issue will remain with the jury.

We do not believe that the introduction of the panel's findings usurps the right of the jury to resolve the issue of contributory negligence.

## 2. Judge's comment on evidence.

Petitioners contend that that introduction of the panel's findings at the subsequent trial constitutes an impermissible comment on the evidence by a judge who presided at the hearing and was a part of the panel. Petitioners' argument is based on Art. VI, § 27 of the Arizona Constitution. That section provides in pertinent part:

"Section 27. Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

■ The purpose of Art. VI, § 27 is to prohibit judges presiding at trial from expressing their opinion as to the evidence presented. *State v. Barnett,* 111 Ariz. 391, 531 P.2d 148 (1975); *State v. Godsoe,* 107 Ariz. 367, 489 P.2d 4 (1971). A judge who is shrouded with authority by virtue of his position in presiding at a trial, will, if he is permitted to comment on the evidence, unduly influence the jury and this danger is greatest when the judge is instructing the jury. See *Beasley v. State,* 20 Ariz. 237, 179 P. 647 (1919).

■ Under the provisions of A.R.S. § 12–567(L), the Superior Court judge who sits on the panel is prohibited from presiding at

any trial arising out of the claim. Thus, the judge who participated in the panel's decision will not be able to comment on the evidence or unduly influence the jury. We find no constitutional violation.

### 3. Judicial function of Arizona courts.

■ Petitioners assert that the provisions of A.R.S. § 12–567 which empower the medical liability review panel to conduct a hearing and find either for the plaintiff or for the defendant, invade the judicial function of the Arizona courts as enunciated in Art. VI, § 1 of the Arizona Constitution. That section provides as follows:

"Section 1. The judicial power shall be vested in an integrated judicial department consisting of a Supreme Court, such intermediate appellate courts as may be provided by law, a superior court, such courts inferior to the superior court as may be provided by law, and justice courts."

The argument put forth is that the presence of a lawyer and a health care provider on the panel having the authority to determine both procedural and substantive issues of law affecting the rights of the citizens of Arizona violates Art. VI, § 1.

In support of their argument, petitioners rely upon the decision of the Illinois Supreme Court in *Wright v. Central Du Page Hospital Ass'n*, 63 Ill.2d 313, 347 N.E.2d 736 (1976). In that case the court held that the presence of a doctor and a lawyer on the medical review panel violated an Illinois constitutional provision similar to our own vesting exclusive judicial power in the courts. Stating that "[t]he application of principles of law is inherently a judicial function," the court ruled the statute there in question usurped the judicial power of the courts by allowing the non-judicial members of the panel to decide questions of law and fact.

We believe that case is readily distinguishable. Under the Illinois statute (I.R.S. Ch. 110 § 58.8) if the parties either agree to be bound or unanimously accept the panel's recommendation, it may serve as the sole basis for the entry of judgment. By contrast, under the provisions of our statute, the panel's finding is intended to encourage settlements and may be introduced into evidence at any subsequent trial, as discussed above, but it can never suffice for the entry of judgment against either party.

■ The provisions of § 12–567 do not empower the medical liability review panels to enter judgment against either party. Its actions are at most advisory. As was stated by Judge Fred C. Struckmeyer, Sr., writing for this court in *Stuart v. Norviel*, 26 Ariz. 493, 226 P. 908 (1924):

"Judicial power is the power of the court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." 26 Ariz. at 501, 226 P. at 910.

In the instant case, the parties may accept or reject the decision as they wish.

The procedures established by A.R.S. § 12–567 do not encroach upon the judicial power of the court and are not violative of Art. VI, § 1 of our Constitution.

### 4. Does the medical liability review panel deny equal protection of the laws to malpractice plaintiffs?

In determining whether the panel provisions violate the equal protection clause, we apply the traditional equal protection test as expressed by the United States Supreme Court:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its law are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970).

And:

" * * * The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.

State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. * * * " *McGowan v. State of Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

■ We will uphold the classification if there exists any set of facts under which the classification rationally furthers a legitimate legislative purpose. *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), cert. denied 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975); *Uhlmann v. Wren*, 97 Ariz. 366, 401 P.2d 113 (1965).

■ Petitioner asserts the classification is arbitrary and unreasonable in that the treatment accorded to medical malpractice plaintiffs is different from tort plaintiffs generally. The medical malpractice plaintiff must first submit his claim to the medical liability review panel before the matter can be heard by the Superior Court. A.R.S. § 12–567(A). The petitioner cites *Simon v. St. Elizabeth Medical Center*, 3 Ohio Op.3d 164, 355 N.E.2d 903 (C.P.1976), which decision held that the compulsory arbitration provisions of the Ohio Medical Act violated, inter alia, equal protection of the laws. We do not agree with the conclusion reached by that court.

The panel provision was one of the several provisions enacted by the Arizona legislature in an effort to curb rising medical malpractice insurance premiums. At the time the Act was enacted, there was evidence that medical malpractice insurance costs, as well as hospital professional liability costs, were doubling every three years. (Arizona Medical Malpractice Insurance Study, Booz, Allen Consulting Actuaries, prepared for the Arizona Legislative Council.)

By providing a system whereby the meritorious claims could be separated from the frivolous ones prior to trial and pretrial

settlements would be encouraged, the Act promoted a legitimate legislative purpose. See *Halpern v. Gozan*, 85 Misc.2d 753, 381 N.Y.S.2d 744 (1976).

We do not believe that the panel provisions violate the equal protection clause because the classification created by the Act has a rational basis.

5. *Abolition of the collateral source rule.*

The common law collateral source rule excludes at trial evidence of any benefits received by the injured party from sources other than the tortfeasor and prohibits any reduction of damages recovered because of such benefits. One rationale for the rule is that if the recovery were reduced by the amount of collateral benefits, the deterrent impact of tort actions would be diminished. Another rationale is that since the plaintiff paid for the benefits, his foresight should not lessen the tortfeasor's liability nor should the plaintiff be penalized for his purchase of increased protection.

The validity of these rationales has been questioned by commentators. Comment, An Analysis of State Legislative Response to the Medical Malpractice Crisis, 1975 Duke L.J. 1417, 1447–1450; see 2 Harper & James, The Law of Torts § 25.22 (1956). Several legislatures have abrogated the collateral source rule in medical malpractice actions by enacting provisions which make evidence of collateral payments to the plaintiff admissible at trial. See, e. g., Cal. Civil Code § 3333.1 and statutes of other states cited in Comment, supra. In a day of increased insurance protection, this rule has allowed plaintiffs to effectuate double and even triple recovery as a result of injuries received by them.

The petitioners contend that provisions of the Arizona Medical Malpractice Act, A.R.S. § 12–561, et seq., abolishing the collateral source rule, is unconstitutional in that it (a) is a special law, (b) is a limitation on damages, and (c) denies equal protection of the laws.

a. Are the panel provisions and the collateral source evidentiary rules "special laws" enacted in violation of Arizona Constitution, Art. IV, Part 2, § 19?

Art. IV, Part 2, § 19 provides:

"Section 19. No local or special laws shall be enacted in any of the following cases, that is to say:

\* \* \* \* \* \*

"3. Changing rules of evidence.

\* \* \* \* \* \*

"5. Regulating the practice of courts of justice.
"6. Limitation of civil actions \* \* \*.

\* \* \* \* \* \*

"13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises."

This article "was patterned after those which occurred in many state constitutions in the late nineteenth century following a proliferation of special and local laws in post-Civil War legislatures." *Jones v. State Board of Medicine,* 97 Idaho 859, 876, 555 P.2d 399, 416 (1976). In *Jones,* the Idaho Supreme Court stated that the "purpose of such constitutional provisions was 'to prevent legislation bestowing favors on preferred groups or localities.'" 97 Idaho at 876, 555 P.2d at 416, quoting *State Ex Rel. Idaho State Park Board v. City of Boise,* 95 Idaho 380, 383, 509 P.2d 1301, 1304 (1973).

■ The "special" laws proscribed by Art. IV must be contrasted with "general" laws which are permissible. A law is "general" if it confers rights and privileges or imposes restrictions upon all persons of a given class. *Schrey v. Allison Steel Mfg. Co.,* 75 Ariz. 282, 255 P.2d 604 (1953). This court has defined a "general" law as follows:

"Laws operating uniformly upon all of a class, when the classification has a basis founded in reason, are not obnoxious to any constitutional provision with which we are familiar. Legislation of the kind is common and often necessary. The legislative judgment in all such matters, un-

less palpably arbitrary, is controlling upon the courts." *Hazas v. State,* 25 Ariz. 453, 458, 219 P. 229, 231 (1923).

■ We believe that the legislature has the right to abolish the collateral source rule as it affects medical malpractice cases just as it has done in the workmen's compensation field. *Ruth v. Industrial Commission,* 107 Ariz. 572, 490 P.2d 828 (1971).

The Arizona Medical Malpractice Act, A.R.S. § 12–561, et seq., operates alike upon all of a given class, i. e., health care providers and persons suing them. Such a classification is reasonable. *Landgraff v. Wagner,* 26 Ariz.App. 49, 546 P.2d 26 (1976). The Act was a legislative response to the difficulties faced by doctors and hospitals in obtaining insurance coverage at reasonable rates. We believe the Act is a general law and does not violate Art. IV, Part 2, § 19 of the Arizona Constitution.

b. Limitation on damages.

■ Petitioner contends, however, that abolition of the collateral source evidentiary rule constitutes a statutory limitation on damages in contravention of Ariz.Const., Art. II, § 31, and Art. XVIII, § 6.

Ariz.Const., Art. II, § 31 states:
"\* \* \* Damages for death or personal injuries
"Section 31. No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person."

Ariz.Const., Art. XVIII, § 6 states:
"\* \* \* Recovery of damages for injuries
"Section 6. The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

The petitioners contend that A.R.S. § 12–565(A) and (B) constitute a statutory limitation on damages because the statute "specifically invite[s] the jury to consider damages claimed by the plaintiff in light of collateral benefits received." We do not agree that A.R.S. § 12–565 limits the amount of damages recoverable.

The purpose of this rule is to inform the fact finder of the true extent of the plaintiff's economic loss in order to avoid the inequity of windfall recoveries. The resulting judgments will no doubt reflect a set-off for the benefits the plaintiff has already received and these lower judgments would be reflected in lower malpractice insurance premiums, one of the objectives of the legislation. It should be noted that admission into evidence of plaintiffs' collateral benefits in no way guarantees any reduction in the damages awarded by the trier of fact. The jury may still choose to ignore the collateral benefits in making its decision as to the damages sustained by the plaintiffs.

c. Equal protection and due process.

█ The petitioners further contend that the abrogation of the collateral source evidentiary rule, A.R.S. § 12–565(A), in conjunction with the non-admissibility of the health care provider's liability insurance coverage, A.R.S. § 12–569, arbitrarily precludes the petitioners from recovering certain expenses that all other tort claimants are entitled to and denies them fundamental due process and equal protection of the laws. The petitioners cite *Simon v. St. Elizabeth Medical Center, supra,* and *Graley v. Satayatham,* 74 Ohio Op.2d 316, 343 N.E.2d 832 (C.P.1976). The Ohio courts held that Sec. 2307.42(B) (Ohio Revised Code) of the Ohio Malpractice Law, which required malpractice complaints to list all benefits of any kind paid or payable to the claimant as a result of the incident forming the basis of the medical claim, denied the malpractice plaintiff the equal protection of the laws. There was "no compelling governmental interest" for this "separate and unequal treatment," said the *Graley* court, because the "extending of special litigation benefits to the medical profession" could cause a decline in the quality of health care if that profession is held less accountable than formerly to the public. 343 N.E.2d at 838.

We do not agree. Abolition of the collateral source rule does not deprive the medical malpractice claimant of any property interest accorded protection by the due process clause of the United States Constitution. Nor is the application of the rule only to malpractice actions so arbitrary and unreasonable as to deny to medical malpractice claimants equal protection of the laws. The rule was intended by the legislature to give the jury the true extent of damages sustained by the plaintiff thereby. By scaling down the size of jury verdicts by the amount of collateral benefits the plaintiff may have received, the legislature could reasonably assume that a reduction in premiums would follow. This was one of the reasons for the Act. The legislature is entitled to proceed "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955).

6. Is the $2,000 cost bond unconstitutional?

The Arizona Constitution, Art. II, provides:

"§ 13. Equal privileges and immunities
"Section 13. No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

█ This clause commands that "all citizens of our State, regardless of their financial status, must be afforded an equal opportunity to the courts and an equal opportunity to appeal." *Hampton v. Chatwin,* 109 Ariz. 98, 99, 505 P.2d 1037, 1038 (1973).

█ If the medical liability review panel finds for the defendant and the plaintiff proceeds with litigation against the defendant, A.R.S. § 12–567(I) imposes the requirement of a $2,000 cost bond secured by cash or its equivalent to be posted by the plaintiff payable to the defendant for the defendant's assessed costs and attorney's fees if the plaintiff does not prevail in the final judgment. The same bond applies to the defendant if the defendant proceeds to trial after the panel finds for the plaintiff. A.R.S. § 12–567(J).

A.R.S. § 12–567(K) authorizes the presiding judge, upon motion, to reduce the amount of the bond upon a determination that the party required to post the bond is indigent, "or upon other just cause." However, the judge "may not eliminate the requirement of the bond." A.R.S. § 12–567(I) makes payment of the bond a condition precedent to maintaining a malpractice action in the superior court: "If such bond is not posted before the plaintiff proceeds further in the action, the action shall be dismissed."

A.R.S. § 12–567(K) prohibits the presiding judge from waiving the bond requirement altogether. As to the indigent, the statute violates the Arizona constitutional privileges and immunities clause, Art. II, § 13, by denying access to the courts. As to the non-indigent, it places a heavier burden upon his access to the court and therefore violates the same clause of the Arizona Constitution. *Hampton v. Chatwin, supra.*

## B. ABUSE OF DISCRETION

### 1. *Could Dr. Palmer testify?*

At the hearing before the panel, the petitioners called Dr. John Palmer, a medical doctor, to testify as to the standard of care required of Dr. Gerchick, a Doctor of Osteopathy. Dr. Palmer was not allowed to testify because he was not of the same school of health care as the defendant.

It is generally held that a practitioner of one school of health care is not competent to testify as an expert in a malpractice action against a practitioner of another discipline of health care. (See Annot. 85 A.L. R.2d 1022) An exception is recognized by some jurisdictions where the testimony indicates the two schools follow the same standards and a breach of that standard by a member of one school would be a breach by a member of the other school. *James v. Falk,* 226 Or. 535, 360 P.2d 546 (1961); *Korljan v. Johnson,* 96 Ariz. 25, 391 P.2d 584 (1964). Petitioners contend that the standard for the use of drugs is the same and that it was apparent that medical doctors and osteopathic doctors follow the same procedure, consult the same sources, *The*

*Pharmacological Basis of Therapeutics,* and have the same standards.

While we might be persuaded to sustain the admission of Dr. Palmer's testimony based upon a recitation of the facts as stated in the pleadings filed in this court, the record before us does not indicate that it was an abuse of discretion to exclude the evidence before the panel. The admissibility of expert testimony is a question for the judge or, in this case, the panel. *State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974), cert. denied, 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975). We cannot state it was an abuse of that discretion to not allow Dr. Palmer to testify.

### 2. *Failure to resubmit to a new panel.*

Petitioners further contend that the trial court erred in not providing for a completely new panel after the first doctor member was disqualified. We do not agree. There is no indication that the disqualified doctor prejudiced the other members of the panel. A substitute was provided and the reconstituted panel heard the matter. We find no error.

## C. DISPOSITION

Having found that the provision of the statute requiring a $2,000 bond to be unconstitutional, this does not mean that we must find the entire statute unconstitutional. We have stated:

"* * * it is well settled in this state that where the valid parts of a statute are effective and enforceable standing alone and independent of those portions declared unconstitutional, the court will not disturb the valid law if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act." *Selective Life Ins. Co. v. Equitable Life Assurance Society of U.S.,* 101 Ariz. 594, 599, 422 P.2d 710, 715 (1967). See also *Millet v. Frohmiller,* 66 Ariz. 339, 188 P.2d 457 (1948); *State v. Coursey,* 71 Ariz. 227, 225 P.2d 713 (1950).

The rest of the statute being a workable entity without the $2,000 bond requirement, the statute stands.

The matter is remanded to the trial court for further action consistent with this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.