727 P.2d 355

**Edward BORJA, Plaintiff/Appellant/Cross-Appellee,**

v.

**PHOENIX GENERAL HOSPITAL, INC., an Arizona corporation and Jose Gochoco, M.D., and Phoenix Emergency Physicians, Ltd., Defendants/Appellees/Cross-Appellants.**

**No. 2 CA–CIV 5711.**

Court of Appeals of Arizona, Division 2, Department B.

May 28, 1986.

Review Denied Oct. 28, 1986.

---

Langerman, Begam, Lewis and Marks by
Samuel Langerman & Amy G. Langerman,

Phoenix, for plaintiff/appellant/cross-appellee Borja.

Snell & Wilmer by Robert J. Gibson & Dora Thomas, Phoenix, for defendants/appellees/cross-appellants Gochoco and Phoenix Emergency Physicians, Ltd.

Fennemore, Craig, von Ammon, Udall & Powers by R.C. Mitten, Timothy Berg and Phillip F. Fargotstein, Phoenix, for defendant/appellee/cross-appellant Phoenix General Hosp.

## OPINION

LIVERMORE, Presiding Judge.

In this medical malpractice action, plaintiff, Edward Borja, appeals from jury verdicts in favor of the three named defendants: Phoenix General Hospital (PGH), Phoenix Emergency Physicians, Ltd. (PEP), and Dr. Jose Gochoco. He contends that the jury was erroneously instructed, that Arizona's Medical Liability Review Panel statute is unconstitutional, that a deposition and affidavit were improperly admitted into evidence and that the verdicts are not supported by competent evidence. Defendants cross-appeal for attorneys' fees. We affirm.

After he was injured in a two-car collision, Borja was brought to PGH's Emergency Room. His central allegation in this case is that defendants failed to timely diagnose and treat his epidural hematoma (blood accumulating between the skull and the dura of the brain) while there. Dr. Gochoco was the attending physician; he was a member of PEP, an organization which contracted with PGH to provide emergency room personnel.

Plaintiff arrived at the hospital at 12:10 a.m. He complained of, and was treated for, pain in his right shoulder. The process of admitting him, taking x-rays of the shoulder and providing attendant care took approximately three hours. There is evidence that Borja's appearance and attitude deteriorated during that time. His epidural hematoma was discovered at 3:24 a.m. and promptly treated. Nonetheless, he suffered severe, permanent, neurological injury. It was Borja's position at trial that his injury was discoverable at a time no later than 2:15 a.m., that Dr. Gochoco fell below the standard of care when he failed to diagnose it at that time and the damages resulted from that negligence. Defendants argued that their discovery occurred at a reasonable time given their belief that Borja was inebriated and other attendant circumstances.

■ Borja first contends that the trial court committed prejudicial error when it gave R.A.J.I. Medical Malpractice instruction number 6, the "error in judgment" or "two schools of thought" instruction. Through that instruction the jury is informed that a doctor does not commit malpractice simply because he employs a method of diagnosis or a course of treatment some doctors do not find efficacious. So long as a respectable minority of physicians approve the disputed technique and so long as the defending doctor properly employed that technique, he has not fallen below the standard of care. *Furey v. Thomas Jefferson University Hospital,* 325 Pa.Super. 212, 472 A.2d 1083 (1984). Plaintiff contends that there exists only one approved method of diagnosing and treating epidural hematoma. Giving the instruction, he says, created a defense not appropriately available because there was no evidence that what Gochoco did was an approved technique. That argument ignores portions of the record.

While one expert testified that an appropriate interim treatment would be to induce a "barbituate coma", another opined that would impair further diagnosis resulting in more harm than good. Although some experts felt signs of "lethargy" were diagnostic, requiring an immediate neurological examination and CAT scan, other testifying doctors said that, given the hour of the night and the fact that Borja had imbibed some alcohol, lethargy was not, in this case, particularly indicative of a hematoma. They suggested a method of diagnosing that incorporated the interim step of a skull x-ray. Under their school a doctor need not perform a CAT scan unless he has

proof of a skull fracture. That testimony evidences a conflict of methodology; the giving of R.A.J.I. number 6 was proper. See *DeMontiney v. Desert Manor Convalescent Center, Inc.*, 144 Ariz. 6, 695 P.2d 255 (1985).

Pursuant to Arizona's Medical Malpractice Act, A.R.S. 12–561 et seq., Borja's complaint was submitted to a medical liability review panel prior to trial. Borja argues that that panel's conclusion should not have been admitted into evidence at trial because the panel review provision, A.R.S. 12–567, is unconstitutional. That provision, as originally enacted, has already been upheld by this state's Supreme Court in *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977). Borja asserts, however, amendments enacted in 1982 and changing circumstances have since rendered the statute defective in four ways.

He contends that the *Eastin* decision rested upon a perceived "crisis" in both the availability and the affordability of medical malpractice insurance, that the crisis has been resolved by formation of a physicians mutual insurance company, MICA, and therefore, A.R.S. 12–567 no longer rests upon any rational basis. Essentially, plaintiff asks us to take judicial notice that health care providers in this state no longer need the protection from frivolous claims nor the promotion of settlements furnished by the review panel procedure. We are in no position to do so; repeal of obsolescent statutes is properly a legislative decision. *Burns v. Burns*, 111 Ariz. 178, 526 P.2d 717 (1974).

While the original review panel provision required screening of all medical malpractice claims, the current statute divides plaintiffs into two categories, those who claim $50,000 or less may proceed directly to trial, but panel review is still a pre-trial requirement for those with claims in excess of $50,000. Borja finds this an unconstitutional denial of equal protection between and among medical malpractice victims. ■ The persons affected by the disputed provision—health care providers and medical malpractice plaintiffs who claim more than $50,000—are not a suspect class. *Eastin v. Broomfield*, supra. The right to bring a legal action for recovery of damages *via a particular procedure* is not fundamental; it is subject to state regulation. *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984). If, then, the $50,000 limitation furthers a legitimate state interest (is rationally based), it must be upheld.

■ A legitimate state interest served by A.R.S. 12–567 is the "weeding out" of frivolous claims before they enter the judicial arena. The review system does, however, impose additional financial burdens, with the result that some meritorious claims become too costly to pursue. That is not in the state's interest because the right to pursue a recovery of damages for bodily injury is fundamental. *Kenyon v. Hammer*, supra. Waiving the panel requirement for smaller claims redresses this statutory prejudice; there is no equal protection violation.

■ The review panel's conclusion is made admissible by statute. A.R.S. 12–567(K). Panel members may not, however, be subjected to cross-examination. Borja asserts this conflicts with Rules 702–705, Rules of Evidence, 17A A.R.S., and is, consequently, a legislative usurpation of the Supreme Court's power to make judicial rules of procedure. Arizona Constitution, Art. VI, § 5(5).

Borja's premise, that the statutory rule flatly contradicts the evidentiary rules, is not well founded. Plaintiffs have the opportunity to present evidence and cross-examine witnesses at the panel hearing. The purposes underlying the evidentiary rules are preserved. Even without the statutory rule, the panel's report would be analogous to one admissible under Rule 803(8)(C), Rules of Evidence, and therefore probably admissible under Rule 803(24). The statutory method of creating evidence has safeguards to insure reliability and is thus a reasonable and workable supplement to the rules of evidence. See *State ex. rel. Collins v. Seidel*, 142 Ariz. 587, 691 P.2d 678 (1984).

Tim Cullins was a friend of plaintiff who was with him on the evening in question. Although not called to testify at trial, Cullins stated, when deposed, that Borja was drunk at the time of the accident. That testimony was read to the jury over plaintiff's objection and an affidavit, signed at the deposition, reiterating Cullins's story was admitted into evidence. Plaintiff's objection that he did not receive timely notice of the deposing was waived when he neither objected in writing, Rule 32(d)(1), Rules of Civil Procedure, 16 A.R.S., nor raised the matter with the court prior to trial. While the affidavit was improperly admitted, it was cumulative of other properly admitted evidence. In addition, an opportunity existed at the deposition to inquire about that statement. Any error was harmless.

Borja's contention that the verdict is not supported by the evidence is meritless in the face of the review panel's identical ruling and the conflict in expert opinion at the trial. Those conflicts as well as the conflicts on the underlying evidence of neurological problems were for the trier.

Defendants' cross-appeal for attorneys' fees is meritless. Their claim of entitlement under former A.R.S. § 12–567(I) cannot survive the invalidation of that section in *Eastin v. Broomfield*, supra. A.R.S. § 12–341.01 has been held inapplicable to this type of tort action. See *Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 725 P.2d 736 (1986).

Affirmed.

HATHAWAY, C.J., and LACAGNINA, J., concur.