948 F.2d 1293
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Derek Jack MALONEY; Kristi E. Maloney; Sean Patrick
Maloney; Neil T. Maloney; Shirley Maloney,
Plaintiffs-Appellants,
v.
William BINDER, Defendant,
and
Gerald GROAT; Joseph R. McAndrew; Marc Zimmerman,
Defendants-Appellees.
 No. 90-15777.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided Dec. 3, 1991.
 
 Before GOODWIN, WILLIAM A. NORRIS and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Kristi E. Maloney and her minor children ("the plaintiffs") appeal the district court's judgment upholding a jury's verdict in favor of Arizona doctors Marc Zimmerman, Joseph R. McAndrew and Gerald Groat ("the doctors"). The plaintiffs alleged medical negligence in failing to diagnose and treat intra-abdominal injuries received by Patrick Maloney ("Maloney") while riding a jet ski on Lake Havasu in Arizona. We affirm.
 
 
 3
 * FACTS
 
 
 4
 On June 27, 1985, at approximately 11:00 a.m., Maloney was operating a jet ski on Lake Havasu when he was struck by a power boat and seriously injured. He was removed from the water and transferred by ambulance to Lake Havasu Regional Hospital. He arrived at the hospital at approximately 12:15 p.m.
 
 
 5
 Groat examined Maloney and called Zimmerman, who made the initial decision not to transfer Maloney to Phoenix for treatment. At about 2:10 p.m., Zimmerman, assisted by McAndrew, operated upon Maloney to remove part of his right arm. Surgery concluded at about 6:10 p.m.
 
 
 6
 Maloney's condition suddenly deteriorated at 8:30 or 9:30 p.m.[1] McAndrew inserted a chest tube and performed a peritoneal tap at about 9:30 p.m. At 10:00 p.m., McAndrew first diagnosed an intra-abdominal injury, and at 10:30-10:45 p.m., the decision was made to transfer Maloney to Phoenix.
 
 
 7
 Maloney remained in the intensive care unit at Lake Havasu Regional Hospital until 1:15 a.m. the next morning, when he was transported by ambulance to the airport and loaded onto an aircraft. After landing in Phoenix, he was transferred to a helicopter. He suffered a cardiac arrest en route. He was pronounced dead at 3:13 a.m. A subsequent autopsy performed by a pathologist at the request of the family concluded that the cause of death was an intra-abdominal and intrapleural hemorrhage due to a ruptured spleen caused by the boating accident.
 
 
 8
 The plaintiffs brought suit claiming medical negligence against the doctors for failing to timely diagnose an intra-abdominal injury, perform a laparotomy (opening the abdominal cavity), and repair Maloney's injured spleen. Judgment was entered on a jury verdict in favor of the doctors and this appeal followed.
 
 II
 DISCUSSION
 
 9
 A. Exclusion of Evidence Supporting Claims Not Presented to Medical Liability Review Panel
 
 
 10
 The district court ruled that Arizona law barred the plaintiffs from introducing into evidence at trial evidence to support any claims not presented first to the Medical Liability Review Panel (MLRP). The plaintiffs argue the district court erred in this interpretation of Arizona law.
 
 
 11
 A district court's interpretation of state law is reviewed under the same independent de novo standard as are questions of federal law. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 
 12
 In 1976, the Arizona legislature adopted Ariz.Rev.Stat. § 12-567, requiring all complaints alleging medical malpractice to be referred to an MLRP before trial.[2] The panels are comprised of a superior court judge, an attorney, and a physician or health care provider engaged in the same field of health care as the defendant. Former Ariz.Rev.Stat. § 12-567(B).[3]
 
 
 13
 Under section 12-567(F), the MLRP "shall determine, with respect to each claim against each defendant, whether the evidence presented to the panel by all parties supports a judgment for the plaintiff or for the defendant." The decision of the panel is submitted as evidence at the trial, and the jury is instructed to give such weight to the MLRP finding as it deems appropriate. Eastin v. Broomfield, 570 P.2d 744, 748-49 (Ariz.1977).
 
 
 14
 Section 12-567(D) required the Arizona Supreme Court to establish procedural rules for the submission of claims to the panel. The court established these rules in the Uniform Rules of Procedure for Medical Liability Review Panels in the Superior Court ("Uniform Rules"). Uniform Rule 3(B) requires a plaintiff to serve a preliminary statement of claims consisting of:
 
 
 15
 a complete and detailed description of the acts or omissions constituting medical negligence, a complete and detailed description of each act or procedure which plaintiff alleges defendant should have undertaken but did not and a description of the manner in which defendant's acts or omissions caused injury to plaintiff. Plaintiff shall not be limited in further discovery by the statements contained therein but in the absence of a timely amendment, the evidence at the hearing shall be limited to the matters described in the preliminary statement.
 
 
 16
 After receiving the plaintiff's preliminary statement of claims, the defendant is required to file a responsive statement answering in detail each allegation. Uniform Rules 3(C).
 
 
 17
 No court has squarely addressed whether a plaintiff may present claims or theories at trial that she failed to present to the MLRP. The plaintiffs rely primarily on Phoenix General Hospital v. Superior Court, 675 P.2d 1323 (Ariz.1984), to support their argument that they may present claims at trial not advanced at the MLRP proceeding. In Phoenix General, the plaintiffs appeared before the MLRP but declined to participate, refused to offer any evidence or cross examine, "and, in effect, stood mute." 675 P.2d at 1324. Their apparent purpose was to minimize the effect of an expected unfavorable panel result. Id. The court upheld the plaintiffs' right to stand mute, despite the technique's effect of making an "end run" around the Arizona law. Id. at 1325.
 
 
 18
 We read Phoenix General more narrowly than the plaintiffs. There is a fundamental distinction between the presentation of evidence to the MLRP and the presentation of claims. Plaintiffs are required under Uniform Rule 3 to present their claims to the MLRP; no rule, however, requires the presentation of evidence. Indeed, the Phoenix General court noted that the plaintiffs "obeyed the requirement ... that the claim be submitted to a panel." Phoenix General, 675 P.2d at 1325. See also id. at 1326 n. 3 ("[p]anel hearings are not intended to substitute for trial; counsel will often need to choose what evidence to present"); Gurr v. Willcutt, 707 P.2d 979, 986 (Ariz.Ct.App.1985) (presentation of evidence at a panel is not mandatory under section 12-567(D)). Thus, Phoenix General does not resolve the issue of admissibility at trial of claims not presented to the MLRP.
 
 
 19
 Other Arizona case law, however, indicates that claims not presented to the MLRP are barred from presentation to the trial court. In 1977, the Arizona Supreme Court declared that a "medical malpractice plaintiff must first submit his claim to the medical liability review panel before the matter can be heard by the Superior Court." Eastin, 570 P.2d at 751. Then, in Barnet v. Superior Court, 605 P.2d 445 (Ariz.1979), the Arizona Supreme Court defined "claim," as used in section 12-567(F), as "each alleged act of negligence," and not merely as a "cause of action." Id. at 446, quoting Campbell v. Arnold, 590 P.2d 935, 936-37 (Ariz.Ct.App.1978), vacated on other grounds, 590 P.2d 909 (Ariz.1979). Reading Eastin in conjunction with Barnet, we believe that the Arizona Supreme Court would require a plaintiff to present an alleged act of negligence to the MLRP before it could be introduced at trial.[4]
 
 
 20
 The legislative purpose behind the creation of the MLRP supports this interpretation. The Arizona legislature enacted section 12-567 to curb rising medical malpractice insurance premiums and to encourage pretrial settlements. Eastin, 570 P.2d at 751. Interpreting the act to require all claims presented at trial to be presented first to the MLRP furthers the legislative purpose of minimizing insurance and litigation costs. Limiting claims at trial to those presented to the MLRP gives the panel greater power and control. See West Valley Camelback Hospital v. Superior Court, 793 P.2d 1124, 1126 (Ariz.Ct.App.1990), (discussing the 1987 amendment to section 12-567).
 
 
 21
 We conclude that the district court properly excluded any evidence supporting claims of negligence that the plaintiffs failed to present to the MLRP.
 
 
 22
 B. Constitutional Arguments Attacking District Court's Interpretation of Section 12-567
 
 
 23
 The plaintiffs do not argue that section 12-567 is unconstitutional.[5] Rather, they argue that the "district court's application of the statute in this case was unreasonable and arbitrary and bore no rational relationship to any legitimate and [sic] legislative purpose."
 
 
 24
 We reject this argument. Nothing in the record supports it. The plaintiffs have not shown that the district court deprived them of due process, equal protection, the right to a jury trial, or any other constitutional right. The plaintiffs cite to Jones v. State Board of Medicine, 555 P.2d 399 (Idaho 1976), cert. denied, 431 U.S. 914 (1977). That case, however, discusses the constitutionality of Idaho's Hospital-Medical Liability Act, not the constitutionality of a court's construction of the act.
 
 
 25
 In Beck v. Washington, 369 U.S. 541 (1962), the Supreme Court refused to find constitutional error in the alleged misapplication of Washington law by Washington courts. "We have said time and again that the Fourteenth Amendment does not 'assure uniformity of judicial decisions ... [or] immunity from judicial error....' Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." Id. at 554-55 (citation omitted); see also Valtsakis v. Commissioner, 801 F.2d 622, 624 (2d Cir.1986) (the existence of divergent results in different circuits does not amount to a violation of equal protection).
 
 
 26
 C. District Court's Decision to Admit Testimony at Trial Regarding Time of Maloney's Destabilization
 
 
 27
 Until the trial was well underway, the defendants and the plaintiffs both claimed that Maloney's condition destabilized and deteriorated severely at approximately 8:30 p.m. In a number of interrogatories, in deposition testimony, and in testimony early in the trial, McAndrew testified to the 8:30 p.m. time period. Later in the trial, Dr. Rauscher, a percipient witness for the defendants, testified that Maloney destabilized at 9:30 p.m. He had earlier testified, both at trial and in deposition, to the 8:30 p.m. time period.
 
 
 28
 The plaintiffs filed a motion in limine to strike Rauscher's testimony and to preclude the doctors from introducing further evidence of the asserted 9:30 p.m. time period. The plaintiffs argued that the time change constituted a new defense barred by the court's ruling limiting evidence at trial to claims and defenses first presented to the MLRP.
 
 
 29
 Initially, the court granted the plaintiffs' motion, finding that McAndrew's testimony to the 8:30 p.m. time period constituted a judicial admission. The following day, however, the court reversed itself by allowing the doctors to testify to the new time but forbidding them from impeaching the MLRP finding by arguing that the panel was unaware of the later time period.
 
 
 30
 A district court's evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988). Here, the change in testimony did not insert a new defense into the case. Rather, it added other evidence to support the existing defense theory. Moreover, the doctors did not obtain any unfair advantage by getting this testimony before the jury. True, they were able to testify to a later time of destabilization, but in doing so they opened themselves up to impeachment for having changed their stories on a critical piece of evidence.
 
 
 31
 The court did not abuse its discretion by admitting the testimony.
 
 D. Jury Instructions
 
 32
 Finally, the plaintiffs argue that the district court erred in failing to give their proffered jury instruction regarding a physician's duty to refer to a specialist.
 
 
 33
 The plaintiffs proposed BAJI 6.04, which reads:
 
 
 34
 It is the duty of a physician who is a general practitioner to [refer a patient to a specialist] [recommend the assistance of a specialist] if under the circumstances a reasonably careful and skillful general practitioner would do so.
 
 
 35
 If the physician fails to fulfill that duty and undertakes or continues to perform professional services without the aid of a specialist, it is the further duty of the physician to have the knowledge and skill ordinarily possessed and exercise the care and skill ordinarily used by reputable specialists in the same field and in the same or a similar locality and under similar circumstances.
 
 
 36
 A failure to fulfill any such duty is negligence.
 
 
 37
 The district court instead gave the following instruction, taken from Recommended Arizona Jury Instructions (RAJI) Medical Malpractice 3: "A physician has a duty to refer a patient to a specialist if the standards of good medical practice require such a referral under the circumstances."
 
 
 38
 The plaintiffs characterize the RAJI instruction given by the court as an "abbreviated version of BAJI 6.04." They contend that the court should have read the second paragraph of the BAJI instruction to the jury because one of their theories of negligence against Groat and Zimmerman was that by failing to call a general surgeon, the doctors were held to the skill of a general surgeon.
 
 
 39
 The RAJI instruction given by the court is a correct statement of Arizona law. See Erickson v. Waller, 569 P.2d 1374, 1377 (Ariz.Ct.App.1977) (evidence in malpractice action supported finding that the defendant general practitioner breached standard of care owed to patient by delaying for two and one-half days a referral to a specialist). The plaintiffs cite no Arizona law, and we have found none, holding that a physician is held to have the knowledge and skill of a specialist if she fails to refer a patient to a specialist.
 
 
 40
 While it is true that a party is entitled to an instruction upon her theory of the case if there is evidence to support it, "[a] party is not entitled to an instruction on its theory of the case if that theory lacks support either in law or in the record." Los Angeles Memorial Coliseum Comm'n v. National Football League, 791 F.2d 1356, 1360 (9th Cir.1986), cert. denied, 484 U.S. 826 (1987). The plaintiffs' proposed instruction lacks support under Arizona law and was properly excluded by the district court.
 
 III
 CONCLUSION
 
 41
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The parties dispute not only the time of the deterioration, but also whether the doctors could testify at trial to the later time. See infra Part II C
 
 
 [2]
 The Arizona legislature amended the statute in 1982 and 1987, and repealed it by Laws 1989, Ch. 289, section 1. The parties agree that the law as it stood in 1986 is applicable to this case. The 1987 amendments apply only to actions filed after December 31, 1987. Laws 1987, Ch. 193, § 4. The 1989 repeal of the Act does not apply retroactively to defeat a litigant's right to convene a medical liability review panel. St. Joseph's Hosp. & Medical Center v. Superior Court, 793 P.2d 1121 (Ariz.Ct.App.1990)
 
 
 [3]
 Unless otherwise indicated below, all references to "section 12-567" refer to former section 12-567 as it stood in 1986
 
 
 [4]
 In 1987, the Arizona legislature amended section 12-567(F) to explicitly require that:
 [n]o claims for relief, theories of liability or defenses relating to medical malpractice which have not been heard and decided by the panel may be presented or argued to the court or jury in any trial of the matter.
 In the absence of any persuasive legislative history, we have no reason to believe that the legislature intended to change, rather than codify, existing law.
 
 
 [5]
 In Eastin, the Arizona Supreme Court decided that requiring medical malpractice actions to be submitted to MLRPs before they could be tried did not violate the equal protection clause of the U.S. Constitution. 570 P.2d at 751