546 P.2d 26

**Esther A. LANDGRAFF, Appellant,**

v.

**A. G. WAGNER, M.D., Samaritan Health Services, a corporation, Good Samaritan Hospital, a business association, and Frank R. Precheny, M.D., Appellees.**

**No. I CA–CIV 2677.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 5, 1976.

As Amended on Denial of Rehearing March 10, 1976.

Review Denied March 30, 1976.

**52**

Herring & Stephan, by Norman Herring, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Donald E. Dyekman, Phoenix, for appellee A. G. Wagner, M.D.

Black, Robertshaw, Frederick, Copple & Wright, P.C., by Harold A. Frederick, Phoenix, for appellees Samaritan Health Services, Good Samaritan Hospital and Frank R. Precheny, M.D.

## OPINION

FROEB, Judge.

This is a medical malpractice action brought by Esther A. Landgraff (appellant) after the discovery and removal of a surgical clamp which had been left within her abdomen following surgery.

The trial court found that the statute of limitations barred the action against the appellees, A. G. Wagner, M.D., Frank R. Precheny, M.D., Samaritan Health Services and Good Samaritan Hospital, and accordingly entered summary judgment in their favor dismissing the case. On appeal we are asked to review the judgment on two issues: namely, whether the applicable statute of limitations is constitutional and, if so, whether there are genuine issues of material fact which would preclude summary disposition.

The complaint alleged that appellant was operated upon for gallstones by Doctors Wagner and John Redman (not a defendant in the action) on September 25, 1962, and Doctors Wagner and Precheny on November 15, 1962, and that in one of the two operations a six-inch hemostat or steel surgical clamp was left within her abdomen. Following these operations she experienced some post-operative difficulty, but no X rays were taken and the clamp was not discovered. For many years following the operations she experienced pain, almost every day, but did not see a doctor. There is an indication in the record that while friends advised her to consult a doctor, her husband was opposed to it and she acquiesced in his wishes. Finally on September 8, 1971, more than nine years after the surgery in which the clamp was left within her, Esther Landgraff experienced acute pain and went to the emergency room at Good Samaritan Hospital where X rays revealed the presence of the surgical clamp. On September 11, 1971, the clamp was surgically removed. This suit was thereafter filed on December 6, 1972 for recovery of damages.

Following appropriate motions the trial court dismissed the action against all defendants on the ground that appellant failed to commence her action within six years after the date of the injury in accordance

with A.R.S. § 12–542(B) which reads as follows:

A cause of action for injury or death against a physician or surgeon, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatrist, licensed psychologist, osteopath, chiropractor, licensed clinical laboratory director, naturopath, or a licensed hospital as the employer of any such person, based upon such person's alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, shall accrue as of the date of injury and shall be commenced and prosecuted within six years after the date of injury or two years after the injured party discovers or through the use of reasonable diligence should have discovered the malpractice, whichever period first occurs. These time limitations shall be tolled for any period during which such person has failed to disclose any act, error or omission upon which such action is based and which through the use of reasonable diligence should have been known to him.

The court also found that appellant failed to commence her action within one year from the date A.R.S. § 12–542(B) took effect as prescribed by A.R.S. § 12–505(C) which states:

If an amendment of pre-existing law shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward.

## THE CONSTITUTIONALITY OF A.R.S. § 12–542(B)

■ We recognize, at the outset, that there is a strong presumption which favors the constitutionality of acts of the legislature. *Arizona Podiatry Association v. Director of Insurance,* 101 Ariz. 544, 422 P.2d 108 (1966); *Selective Life Ins. Co. v. Equitable Life Assurance Society,* 101 Ariz. 594, 422 P.2d 710 (1967); *McKinley v. Reilly,* 96 Ariz. 176, 393 P.2d 268 (1964). Indeed, we must be satisfied beyond a reasonable doubt before we will declare a statute unconstitutional. *Shaw v. State,* 8 Ariz.App. 447, 447 P.2d 262 (1968).

Several issues regarding the constitutionality of A.R.S. § 12–542(B) are raised by appellant.

The first involves the question of whether a statute of limitations can constitutionally bar a claim for personal injury where the claimant was never aware of the claim.

The general rule relating to whether a period of limitation will run against a claimant where he or she has no awareness of the claim is stated in 51 Am.Jur.2d *Limitation of Actions,* § 146:

. . . the general rule in actions at law is that the mere fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not prevent the running of the statute or postpone the commencement of the period of limitation until he discovers the facts or learns of his right thereunder. . . .

This court has recently followed the rule in *Jackson v. American Credit Bureau, Inc.,* 23 Ariz.App. 199, 531 P.2d 932 (1975) (no constitutional issue raised). Since it is often seen as leading to a necessarily harsh result, courts have made exceptions to it, particularly in the medical malpractice field. This court, for example, held in *Mayer v. Good Samaritan Hospital,* 14 Ariz. App. 248, 482 P.2d 497 (1971) that the period of limitation under the predecessor to A.R.S. § 12–542(B) did not begin to run until the patient knew or should have known of the malpractice. This interpretation of the statute of limitations, often referred to as the "discovery" rule, has been widely adopted in other states as well. See: *Statutes of Limitations and Undiscovered Malpractice,* 16 Cleveland-Marshall Law Review 65 (1967) and 80 A.L.R.2d

368, *When statute of limitations commence to run against malpractice action against physician, surgeon, dentist, or similar practitioner.*

Appellant concedes that absent a controlling constitutional provision, the legislature may enact a statute of limitations which will run despite the claimant's lack of awareness of the claim. She argues, however, that in Arizona such a limitation on an action to recover for personal injuries is unconstitutional by reason of Article 18, § 6 of the Arizona Constitution, which reads:

> The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

▉▉▉ Her contention is that the "right of action" set forth in Article 18, § 6 of the Arizona Constitution implies subjective awareness of the right. She argues that subjective awareness of a claim for personal injury is thus raised to a constitutional level and is protected against legislation which would remove it as consideration in determining whether the period of limitation has run. We disagree, however, that this meaning can be read into Article 18, § 6. We hold that the "right of action" mentioned in the constitutional provision is equivalent to the common law action for negligence which, by reason of the provision, is embedded in the Constitution. See *Alabam's Freight Co. v. Hunt,* 29 Ariz. 419, 242 P. 658 (1926). We are referred to no case which holds that subjective awareness of the claim is something which necessarily flows from the constitutional language and we decline therefore to attribute this meaning to it. Likewise, we do not agree that the running of the statute of limitations without awareness on the part of the claimant is equivalent of "abrogation" of "the right of action." To "abrogate" means "to annul, repeal, or destroy." Black's Law Dictionary (Rev. 4th Ed.). A.R.S. § 12–542(B) does not either annul, repeal or

destroy the right of action for personal injury. It does qualify it, however, by providing for a reasonable period of time within which it must be brought. The Arizona Supreme Court has held that even a constitutional right is subject to a reasonable statute of limitations. *Rutledge v. State,* 100 Ariz. 174, 412 P.2d 467 (1966). Reasonable restrictions do not "abrogate" the right to recover damages for injuries. We find the statute of limitations under review here to be a reasonable legislative restriction upon the right of action even in view of its seemingly unfair effect upon a claimant who was unaware of the claim.

Appellant asserts that A.R.S. § 12–542 (B) deprives her of a constitutionally protected right of action without due process in violation of Article 2, § 4 of the Arizona Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

▉▉▉ Due process is a concept more difficult to define than it is to apply. It is typically invoked to assure that rights and property are not taken by governmental authority without notice and an opportunity for hearing. In the context of a statute of limitations, we recognize that a reasonable period of limitation imposed by statute does not offend the concept of due process or destroy the right involved. See *United States v. Morena,* 245 U.S. 392, 38 S.Ct. 151, 62 L.Ed. 359 (1918). See also *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). There is no contention that the time period set forth in A.R.S. § 12–542(B) is unreasonable. The only issue is whether the running of the statute without awareness of the right of action by the claimant offends the concept of due process. In part, we have already answered this question when we determined that subjective awareness was not a necessary element of a "right of action." While the concept of due process sweeps even more broadly than Article 18, § 6 of the Arizona Constitution, we do not agree that due process demands awareness of the right of action before the statute of

limitations will run against it. There are innumerable instances, of which this is merely one, where the legislature has determined that rights will be altered and sanctions imposed wholly apart from whether the person affected gained personal awareness. In this sense, legislative policy is controlling. We must assume that by enacting A.R.S. § 12–542(B), the legislature weighed the conflicting policies which are inherent in any statute of limitations, namely, the merit of bringing repose to old claims and the detriment of foreshortening just claims however tardily asserted. We hold that a claimant is not denied due process of law where a reasonable period of limitation has barred the claim without awareness by the claimant that he or she has been injured. Whether the legislative policy behind the statute is good or bad is not for us to determine.

■ It is next contended that the statute deprives appellant of the equal protection of the law guaranteed by Article 2, § 13 of the Arizona Constitution and the Fourteenth Amendment to the United States Constitution. We find this argument without merit since she and all persons with claims for malpractice are affected equally by the application of A.R.S. § 12–542(B). The period of limitation affects all people within the class uniformly. Appellant raises, as part of her argument concerning equal protection, Article 2, § 13 of the Arizona Constitution which provides that no law shall grant privileges or immunities to one class of citizens not granted equally to others. Thus, her constitutional attack is lodged against the classification of "health providers" as a group, contending that it is unreasonable that they be granted special protection by the statute. We do not agree.

■ A state is not prohibited upon constitutional grounds from making classifications of persons and things or from passing laws which apply only to persons within a designated class, provided the classification is neither arbitrary nor unreasonable. The propriety of any classification is for the legislature and will not be invalidated by the court unless it is whimsical, capricious, arbitrary or without reason. See *Valley National Bank of Phoenix v. Glover*, 62 Ariz. 538, 159 P.2d 292 (1945); *Schrey v. Allison Steel Mfg. Co.*, 75 Ariz. 282, 255 P.2d 604 (1953).

■ One of the tests of the reasonableness of a classification is whether there is a substantial difference between those within and those without the class. *Farmer v. Killingsworth*, 102 Ariz. 44, 424 P.2d 172 (1967); *Edwards v. Alhambra Elementary School Dist.*, 15 Ariz.App. 293, 488 P.2d 498 (1971). In this case, the broad category of persons within the class are referred to as "health providers." We find that the importance to the public of good health care and the problems which arise when malpractice claims are brought against health providers after the passage of many years constitute sufficient reasons for the legislature to place them in a separate classification for this purpose. In finding a rational basis to the classification, we are supported by decisions from other states. See, for example, *McCarty v. Goldstein*, 151 Colo. 154, 376 P.2d 691 (1962); *Sellers v. Edwards*, 289 Ala. 2, 265 So.2d 438 (1972). To the contrary, see *Fujioka v. Kam*, 514 P.2d 568 (Hawaii 1973).

## IS THE DATE OF INJURY A QUESTION OF FACT?

■ Appellant urges us to hold that the point in time when the "injury" occurred is a disputed question of fact requiring reversal of the summary judgment. As appears from the statute, quoted above, the cause of action for malpractice "shall accrue as of the date of injury . . .". When was the date of injury in this case? Appellant suggests that it could just as well have been September 8, 1971 when the clamp was surgically removed, as September 25 or November 15, 1962 when it was first left inside her. We are unable to give the statute such a construction, however, for it appears clear that the legisla-

ture intended the date of injury in this type of case to be the date on which the foreign object was left within the patient's body. First, the words "date of injury" imply a single date in time, not multiple dates. On such a basis the date of injury must necessarily be the original act of malpractice, for otherwise, where the effects of the malpractice may be continuous, there would never be an ascertainable date as contemplated by the statute. While the results of the original injury may continue, even to the point of further surgery to correct it, we believe the legislature intended the date of injury to be the point at which the malpractice first occurred. Assuming this to be the case, the date may nonetheless be a question of fact in some cases, but here there is no factual dispute that the date of the operation involving the hemostat was either September 25 or November 15 of the year 1962. Moreover, a reading of paragraph B of A.R.S. § 12–542 in its entirety confirms this. The requirement that the patient bring the action within two years of the date when he knew or should have known of the malpractice would be rendered meaningless if the period was not deemed to begin when the initial act of malpractice occurred. Otherwise it would be possible for a patient to know full well that the malpractice had occurred, yet the two-year period would not begin to run until a later event connected with the malpractice, such as the surgical removal of the offending foreign body. This obviously would make no sense and is clearly against the intent of the statute.

Our conclusion is supported by the legislative background of A.R.S. § 12–542(B). In 1971 when *Mayer v. Good Samaritan Hospital,* supra, was decided by this court, the predecessor statute of limitations provided that an action for personal injury (which included an action for malpractice) had to be "commenced and prosecuted within two years after the cause of action accrues . . .". A.R.S. § 12–542. In *Mayer,* this court adopted the so-called "discovery" rule as to medical malpractice actions, construing the language of the statute to mean the period of limitation commenced to run when the malpractice was known or should have been known by the plaintiff. In its opinion, the court noted that:

> The legislature is better equipped than the courts to take into consideration whether an outside time limitation should be put on a "discovery" oriented statute of limitations, and the length of such a limitation.
>
> * * * * * *
>
> If the legislature concludes that our determination of their intention be incorrect, or if correct, desires to place outside limitations on actions such as this, it is more than appropriate that they should do so. [14 Ariz.App. at 252–253, 482 P.2d at 501].

This is precisely what occurred in 1971 when A.R.S. § 12–542 was amended to provide for a maximum period of six years within which medical malpractice actions must be brought. As this intention appears clear, then so too does the intention that the period is to begin upon the occurrence of the negligent conduct not upon its later consequences. The "date of injury" then is the date the claimed negligent conduct first was imposed upon the patient. The time is not measured from the point at which damages resulting from the "injury" either appear or disappear.

## ISSUES OF FACT REQUIRING TRIAL

There are two issues of fact which we find necessitate reversal of the summary judgment entered by the trial court. The first is whether the period of limitation was tolled because either one or all of the *appellees* failed to disclose the claimed negligent act when they either knew or should have known of it. The second is whether *appellant* knew or should have known of the presence of the surgical clamp.

As for the first question, the last sentence of A.R.S. § 12–542(B) is pertinent:

These time limitations shall be tolled for any period during which such [health provider] has failed to disclose any act, error or omission upon which such action is based and which through the use of reasonable diligence should have been known to him.

■ Since the sentence is ambiguous, we must construe it before it is applied to the facts of the case. Does the tolling provision come into play because the claimed act of malpractice is not discovered in the course of treatment *following* the malpractice or does it become effective upon the occurrence of the malpractice even if there is no follow-up treatment? The language of the statute when read literally would seem to suggest that the test of reasonable diligence in discovering the malpractice could be applied to the act itself, even if there was no follow-up treatment. This would, in a sense, make the tolling provision dependent upon the outcome of the case, since the test for malpractice and the test for reasonable diligence in discovering it would be nearly identical. Since it does not appear that the legislature intended the tolling provision to be contingent upon this alone, we must assume that the test of reasonable diligence is applied to the follow-up treatment given the patient after the act of malpractice has occurred. Thus, in the course of events which follow the malpractice, the health provider will lose the protection of the statute of limitations if reasonable diligence would have made the malpractice apparent and it is not thereafter disclosed. This would appear to be the more reasonable interpretation of this statutory provision.

Appellant argues that whether the negligent act upon which the action is based should have been known and thus disclosed to the appellant is a question of fact which should not have been determined by the trial court on summary judgment. Appellees contend that there is no genuine issue raised because there is no expert testimony in the record that adherence to the standard of medical practice in the community would have resulted in the discovery of the negligent act.

■ It must be remembered we are dealing here with a surgical instrument which was left within the appellant's body after an operation. In our opinion the testimony of an expert is not required in this instance to establish the standard of medical care in the community. The error is so self-evident that a jury can determine the question of negligence without reliance upon the opinion of an expert. By the same token the jury can also determine whether the appellees could have known of the mistake through the use of "reasonable diligence" so as to resolve the issue of whether the statute of limitations was tolled.

■ Thus whether the statute of limitations was tolled is a question of fact to be determined by the trier of fact. Unless it is tried separately in advance of trial, it becomes an issue in the case in chief. It appears then that this case (and perhaps most others) this important procedural question, which could determine whether a trial on the merits is warranted, must await trial of the main issue, since it would appear impractical to try it separately. While the issues are not identical, it is difficult to believe that a jury would determine the medical malpractice issue differently from the statute of limitations issue, since the underlying question is nearly the same. By reason of this, A.R.S. § 12–542(B) has a built-in problem in that it creates specific time limits within which an action must be brought, but as a practical matter will often require the case to be tried first to determine if those time limits should be applied. The problem, however, is one for consideration by the legislature, not the court.

We turn now to the second fact question, namely, whether *appellant* knew or should have known of the presence of the surgical clamp in her abdomen. The issue

is raised because the record indicates she experienced physical difficulties at certain times but chose not to seek medical advice or evaluation.

 If it is determined appellant should have known of the surgical clamp more than two years before the action was filed, the action is barred. This is so, even though it might be determined that the tolling provision discussed earlier stopped the running of the statute in favor of appellant. We reach this conclusion because it appears quite clearly, in juggling the two provisions, to be the legislative intention that the actual or presumed knowledge of the cause of action by the patient will bar the action after two years regardless of whether it is tolled because of the omissions of the health provider.

On the other hand, if it is determined that appellant had no reason to know of the malpractice, is the action nevertheless barred? This depends upon whether the statute was tolled in her favor because of the duty of reasonable diligence placed upon the health provider. If it was tolled until the discovery of the surgical clamp on September 8, 1971, her action was timely filed, since she then had two years within which to file it. It follows, of course, that the one-year salvage period of A.R.S. § 12-505(C), quoted earlier, never takes effect because A.R.S. § 12-542(B) would not then have shortened the period for filing which she would have had under previous law. If, however, it is determined that the tolling provisions do not take effect and operate in her favor, then six years would have run under A.R.S. § 12-542(B), the effect of which would be to shorten the period which was in effect when A.R.S. § 12-542(B) was enacted (two years from actual or presumed discovery). This would then invoke A.R.S. § 12-505 (C) which sets up a one-year salvage period for filing the action beginning on August 13, 1971 (which was the effective date of A.R.S. § 12-542(B)). Since appellant's action was filed approximately one year and four months after August 13,

1971, her action would necessarily be barred.

As it is necessary for the trial court to determine these fact issues under this complicated and seemingly unworkable statute of limitations, we reverse the judgment and remand the case for further proceedings consistent with this opinion.

DONOFRIO, P. J., and OGG, J., concurring.