688 P.2d 1016

William A. KENYON, Jr., the surviving father of Baby Girl Kenyon, on his own behalf, and for and on behalf of Sharon D. Kenyon, the surviving mother of Baby Girl Kenyon; Sharon D. Kenyon and William A. Kenyon, Jr., wife and husband, Plaintiffs-Appellants,

v.

Raymond E. HAMMER, M.D., and Jane Doe Hammer, husband and wife, Defendants-Appellees.

No. 1 CA–CIV 5518.

Court of Appeals of Arizona, Division 1, Department B.

May 12, 1983.

Leonard & Clancy, P.C. by James J. Leonard, Jr., Kenneth P. Clancy, Michael J. O'Melia, Phoenix, for plaintiffs-appellants.

Jones, Teilborg, Sanders, Haga & Parks by Robert J. Bruno, Phoenix, for defendants-appellees.

## OPINION

GRANT, Judge.

The issue before us in this medical malpractice action is whether the case was properly dismissed on the grounds that the statute of limitations barred the plaintiffs' claims. We find that the claims were not barred and reverse the judgment of the trial court.

Appellant Sharon Kenyon first became pregnant in 1971, and was under the care of Appellee Dr. Hammer from November, 1971, until her delivery on July 10, 1972. During the course of Mrs. Kenyon's pregnancy, a blood sample was drawn. A laboratory report clearly indicated that she had type A, Rh negative blood. A nurse who was an employee of Dr. Hammer, erroneously copied in Mrs. Kenyon's chart that her blood type was Rh positive, rather than Rh negative. As a result of this alleged negligence, Sharon Kenyon did not receive a drug known as RhoGAM immediately after delivery.[1]

Mrs. Kenyon delivered a second child on April 26, 1978, who was born dead. That same day, Mrs. Kenyon underwent surgery for a tubal ligation.

The Kenyons filed their complaint on April 30, 1979, alleging two claims. The first claim is for the wrongful death of the Kenyon baby on April 26, 1978. The second claim is for personal injuries sustained by Mrs. Kenyon, including medical expenses associated with her second pregnancy and the tubal ligation, and damages for the resulting sterility. Both claims are based upon the defendant's alleged negligence in incorrectly recording Mrs. Kenyon's blood type.

The defendants filed a motion for summary judgment/motion to dismiss on the ground that the statute of limitations barred both claims. The court granted the motion and made the following findings:

1. That there is no issue remaining of "intentional, concealing, or misrepresenting of facts about the surgery."

2. That the injury complained of occurred on or about July 9, 1972.

3. That the action has been brought more than one year (1) year after the effective date of ARS 12–564.

4. That the defendant is a licensed health-care provider.

5. That this matter be barred by the Statutes of Limitation.

Appellants argue on appeal that the trial court erred in finding that the injury complained of occurred on or about July 9, 1972. As a result of this initial erroneous determination, argue appellants, the court further erred in determining that the matter was barred by the statute of limitations. Additionally, appellants argue that A.R.S. § 12–564 violates both the Arizona and federal constitutions. We will address Mrs. Kenyon's claim for her own personal injuries first.

A.R.S. § 12–564 is the current statute of limitations provisions for actions against licensed health care providers. That section provides as follows:

§ 12–564. Health care, injuries; limitations of actions; exception

A. A cause of action for medical malpractice against a licensed health care provider accrues as of the date of the injury and shall be commenced and prosecuted within three years after the date of injury. In no event shall the time for commencement of legal action exceed three years from the date of injury except as provided in subsections B, C and D.

B. In an action based on injury through the leaving of a foreign object having no therapeutic, diagnostic or other medical reason for remaining in the patient's body, the period of limitations shall be tolled until the discovery of the foreign

---

1. RhoGAM acts by suppressing the specific immune response of Rh negative individuals to Rh positive red blood cells. Clinical studies proved that administration of RhoGAM within 72 hours of delivery of a full-term infant reduced the incidence of Rh isoimmunization as a result of pregnancy from 12–13% to 1–2%. Physicians Desk Reference, p. 1377 (36th ed. 1982).

object or when the foreign object, with the exercise of reasonable diligence, should have been discovered, whichever occurs first.

C. In an action where a defendant or an agent of a defendant has intentionally prevented the discovery of an injury caused by that defendant by concealing or misrepresenting facts about the injury, the period of limitations shall be tolled from the date of the injury until the discovery of the injury or the time when, with the exercise of reasonable diligence, it should have been discovered, whichever occurs first.

D. Notwithstanding the provisions of § 12–502, in an action on behalf of a minor injured under the age of seven, the applicable period of limitations begins to run when the minor reaches his or her seventh birthday or on death, whichever occurs earlier.

Appellants argue that the date of the injury which forms the basis for Mrs. Kenyon's separate claim was April 26, 1978, which is the date that Mrs. Kenyon underwent surgery for a tubal ligation, as a direct result of the defendant's claimed medical negligence. Until that point in time, argue appellants, there was no injury, and no legal right to sue. In support of this argument, appellants cite *Griesmer v. Griesmer,* 116 Ariz. 512, 570 P.2d 199 (App.1977). In that case Division 2 of this court ruled that the statute of limitations did not begin to run on an assault claim between a husband and wife until the marriage terminated because the doctrine of interspousal tort immunity precluded a cause of action from arising while the parties were still married.[2] The court stated:

A cause of action accrues whenever one person may sue another. The statute of limitations then begins to run. [citations omitted] At the time of the acts alleged in the complaint, appellant was precluded from suing appellee by the doctrine of interspousal immunity. [citations omit-

ted] Appellee argues that the policy underlying the statute of limitations is to protect defendants from litigation of "... stale claims where plaintiffs have slept on their rights ..." [citation omitted] *To apply that policy to these facts, however, would punish appellant for failing to commence an action which the courts would have dismissed had he commenced it.* If there was no enforceable right until the marriage terminated, [citation omitted] the cause of action could not have accrued until the dissolution on March 10, 1975. Thus, as appellant urges, the statute of limitations did not begin to run until that time.

116 Ariz. at 512–13, 570 P.2d at 199–200 (emphasis added).

Appellants argue that this principle applies to the facts in this case because, until April 26, 1978, Mrs. Kenyon did not suffer any personal injury and if suit had been brought prior to that time, the cause would have been dismissed.

Appellees, on the other hand, argue that A.R.S. § 12–564 specifically states that "[a] cause of action for medical malpractice against a licensed health care provider accrues as of the date of the injury ..." Appellees then argue that this court has already interpreted identical language in A.R.S. § 12–542(B) (the predecessor to A.R.S. § 12–564) and concluded that the "date of injury" is the date the claimed negligent conduct was first imposed upon the patient. *Landgraff v. Wagner,* 26 Ariz.App. 49, 546 P.2d 26 (1976). In *Landgraff,* we stated that the time is not measured from the point at which damages resulting from the "injury" either appear or disappear. We reasoned as follows:

First, the words "date of injury" imply a single date in time, not multiple dates. On such a basis the date of injury must necessarily be the original act of malpractice, for otherwise, where the effects of the malpractice may be continuous, there would never be an ascertainable

---

**2.** The doctrine of interspousal tort immunity has since been abolished in Arizona. *Fernandez* *v. Romo,* 132 Ariz. 447, 646 P.2d 878 (1982).

date as contemplated by the statute. While the results of the original injury may continue, even to the point of further surgery to correct it, we believe the Legislature intended the date of injury to be the point at which the malpractice first occurred.

26 Ariz.App. at 56, 546 P.2d at 33.

Appellants would distinguish *Landgraff* on the grounds that in *Landgraff,* which involved the leaving of a surgical clamp in the plaintiff's abdomen, the plaintiff could have sued had she been aware of the defendant's negligence. In this case, argue appellants, not only was Mrs. Kenyon unaware of the physician's negligence, but additionally, she had no claim until the subsequent injuries resulted on April 26, 1978.

We agree that the statute of limitations does not begin to run on a claim for medical malpractice until injury occurs. *See United States v. Reid,* 251 F.2d 691 (5th Cir.1958); *Cook v. Yager,* 13 Ohio App.2d 1, 233 N.E.2d 326 (1968). A.R.S. § 12–564(A) states this clearly. While in many situations the injury will occur simultaneously with the act of malpractice, this is not always the case. *Rosenthal v. Kurtz,* 62 Wis.2d 1, 213 N.W.2d 741 (1974). Under the facts of this case, for example, Mrs. Kenyon suffered no compensable injury at the time Dr. Hammer failed to administer the drug RhoGAM after the birth of her first child. If she had decided not to have more children, or if her subsequent children had Rh negative blood as she has, there would have been no injury sustained. Only when she became pregnant with a fetus having Rh positive blood which fetus was subsequently injured by the mother's Rh positive antigens did she incur any damages. Thus, we believe that she was injured at the point of conception, rather than at the time of birth, of her second Rh positive child. This is not an issue which must be decided in this matter, however,

since in either case, the action filed April 30, 1979, was not barred by the three-year statute of limitations.

A case closely on point is *Olson v. St. Croix Valley Memorial Hospital, Inc.,* 55 Wis.2d 628, 201 N.W.2d 63, 64 (1972). In that case, the plaintiff, whose blood type was Rh negative, was given a blood transfusion with Rh positive blood. She subsequently married and gave birth to one child which lived only seven hours, and another which was delivered stillborn. The applicable statute of limitations provided that an action to recover damages for injuries must be brought within three years after the cause of action accrues. The Wisconsin Supreme Court recognized that in a malpractice case the injury does not necessarily occur at the same time as the negligent act, and only when injury occurs does a cause of action accrue. The court was thus confronted with the question of when the injury occurred.

The court in *Olson v. St. Croix Valley Memorial Hospital, Inc.* determined from the facts alleged in the complaint that the first injury occurred in 1962 when the improper transfusion was given because at that point, the plaintiff's capacity for future childbearing was impaired. Thus, the statute of limitations began to run in 1962 and the complaint filed in 1970 was barred. As the dissent pointed out, however, no injury which could give rise to a cause of action occurred until the first child died shortly after birth.[3] Chief Justice Hallows stated:

> [T]he improper blood in the plaintiff's body was not an injury but a part of the chain of causation allegedly resulting in the death of the child. If the plaintiff had never married, presumably she never would have suffered any actual damage from the improper blood.

55 Wis.2d at 635, 201 N.W.2d at 66.

We agree with Justice Hallow's analysis. Since no injury occurred to Mrs. Kenyon

---

**3.** The majority noted that from the face of the complaint, under any theory, the injury complained of could not have occurred later than December 1, 1966, the date the first child was born and died. This was still four years prior to the commencement of the action and thus,

"[e]ven were we to consider the death of one of the children in 1966 as the event that triggered the cause of action, the 1970 lawsuit was brought too late." 55 Wis.2d at 633, 201 N.W.2d at 65.

until she either conceived or gave birth to her second child, this cause of action was timely filed. To rule otherwise would bar her right to sue before it arises in contravention of *Griesmer* and Art. 18, § 6 of the Arizona Constitution which prohibits the abrogation of the right of action to recover damages for injuries.

■ We do not intend by our decision to resurrect the "discovery rule" in medical malpractice actions, which provided that the statute of limitations begins to run when the plaintiff knew or by the exercise of reasonable diligence should have known that there was malpractice. *See Mayer v. Good Samaritan Hospital,* 14 Ariz.App. 248, 482 P.2d 497 (1971). In enacting A.R.S. § 12–564 in 1976, the legislature clearly intended to abandon the "discovery rule" in medical malpractice actions except as specifically provided in subsections B and C of the statute. Those subsections are not applicable to the facts of this case. We next consider the wrongful death claim.

Appellants argue that in a wrongful death action, the statute of limitations begins to run from the time of death. Therefore, since the Kenyons' second daughter did not die until April 26, 1978, the cause of action for her death did not arise and the statute of limitations did not begin to run until the death occurred.

Appellees concede that in most cases a wrongful death accrues at the death of the injured party. A.R.S. § 12–542(2).[4] When the suit is brought against a health care provider, however, appellees argue that § 12–564, the statute of limitations relating to health care injuries, applies rather than A.R.S. § 12–542. Thus, the argument continues, the statute of limitations begins to run from the date of injury which, in this case, would be the date of the alleged medical malpractice in 1972. *Landgraff v. Wagner, supra.*

We reject appellees' analysis for three reasons. First, we note that although in some jurisdictions the statute of limitations in a wrongful death action begins to run from the date of injury or negligent act, *See Annot.,* 97 A.L.R. 2d 1151, 1173 § 6[b] (1964), the rule in the majority of jurisdictions, and in Arizona, is that the statute of limitations begins to run from the date of death. *Id.* at 1154 § 3; *Gomez v. Leverton,* 19 Ariz.App. 604, 509 P.2d 735 (1973); *Rogers v. Smith Kline & French Laboratories,* 5 Ariz.App. 553, 429 P.2d 4 (1967). We do not believe that this rule was affected by the enactment of A.R.S. § 12–564, which clearly applies to actions for *injuries,* not wrongful death. Secondly, even if we were to accept appellees' analysis, the date of injury to the deceased child would be the relevant trigger for the statute of limitations, not the date of injury to the mother. The injury to the deceased child could not have occurred prior to the date the child was conceived. Regardless of when the child was injured during gestation, the complaint was timely filed.

Finally, we reject appellees' analysis for the same reasons discussed with regard to the mother's claim for personal injuries. A cause of action does not arise until there has been damage. There could be no damages in a wrongful death action until there has been a death. *See Clark v. Singer,* 250 Ga. 470, 298 S.E.2d 484 (1983). In that case, the Supreme Court of Georgia ruled that a statute of limitations which ran from the date of malpractice, as applied to actions for wrongful death, was unconstitutional as a denial of equal protection and due process.

Because of our resolution of this case, we need not address Appellants' constitutional arguments.

---

4. A.R.S. § 12–542 provides:

   Except as provided in §§ 12–551 and 12–564, there shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

   1) ...

   2) For injuries done to the person of another when death ensues from such injuries, which action shall be considered as accruing at the death of the party injured.

For the foregoing reasons, the judgment granting the defendants' motion for summary judgment is reversed and this matter is remanded to the trial court for further proceedings.[5]

FROEB, P.J., and GREER, J., concur.

---

**5.** We note that in Arizona an unborn fetus is not a "person" within the wrongful death statute. *See Kilmer v. Hicks,* 22 Ariz.App. 552, 529 P.2d 706 (1974). Whether this concept applies to the facts in this case was not argued below or on appeal, and we therefore do not address the issue.