692 P.2d 290

Teresa V. BARRIO, individually,
Plaintiff/Appellant,

v.

SAN MANUEL DIVISION HOSPITAL
FOR MAGMA COPPER COMPANY;
Ruth Elizabeth Findlay, individually
and as personal representative of the
estate of Francis M. Findlay, M.D.;
Franc Brodar, M.D., and Betty Brodar,
husband and wife, Defendants/Appel-
lees.

No. 2 CA–CIV 4651.

Court of Appeals of Arizona,
Division Two.

June 13, 1983.

Haralson, Kinerk & Morey, P.C. by Burton J. Kinerk and William H. Ricker, Tucson, for plaintiff/appellant.

Robbins & Green, P.A. by Richard W. Abbuhl and Brian Imbornoni, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Chief Judge.

The issue in this case is whether A.R.S. § 12–564(D), which requires children between the ages of 7 and 18 to institute their medical malpractice claims within the same period of time as adults, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Privileges and Immunities Clause of the Arizona Constitution.

On February 11, 1982, plaintiff/appellant Teresa V. Barrio filed a medical malpractice action against San Manuel Division Hospital for Magma Copper Company, Ruth Elizabeth Findlay, individually and as personal representative of the Estate of Francis M. Findlay, M.D., Franc Brodar, M.D. and Betty Brodar, husband and wife. Appellant alleged in her complaint that she was born on April 8, 1962, at the San Manuel Division Hospital for Magma Copper Company. She further alleged that the medical care rendered by Drs. Findlay and Brodar in connection with her birth caused her serious and permanent injuries. Liability on the part of San Manuel Hospital for Magma Copper Company is predicated upon the theory of respondeat superior.

Defendants/appellees filed a motion for summary judgment on the ground that appellant's claim was barred by A.R.S. § 12–564. A.R.S. § 12–564(D) requires children between the ages of 7 and 18 to institute their medical malpractice claims within the same period of time as adults, which is three years in the case of malpractice actions. A.R.S. § 12–564(A). Because § 12–564 became effective on February 27, 1976, appellant was given, pursuant to A.R.S. § 12–505(C), until February 27, 1977, in which to file her claim for malpractice. Since she did not do so, the court granted appellee's motion for summary judgment.

Appellant has three contentions: (1) That infants should be regarded as a "suspect class", thus requiring the application of the strict scrutiny test to determine whether a compelling state interest mandated the passage of A.R.S. § 12–564(D); (2) that if the strict scrutiny test is not applicable, the court should apply an intermediate level of scrutiny—that the statute must have a significant relationship to the purposes which the statute serves, and (3) that in any event, A.R.S. § 12–564(D) does not meet the "rational basis" test. We do not agree and affirm.

Appellant contends that children are a suspect class requiring application of the "strict scrutiny" test to determine whether there was a *compelling* state interest which mandated the passage of A.R.S. § 12–564(D). We do not agree. The concern of equal protection analysis is the classification of individuals or "legislative line drawing." J. Nowak, R. Rotunda & J. Young, *Handbook on Constitutional Law* 519 (1978). As a general rule, a state is not prohibited upon constitutional grounds from making classifications of persons and things or from passing laws which apply only to persons within a designated class, provided the classification is neither arbitrary nor unreasonable. *Landgraff v. Wagner*, 26 Ariz.App. 49, 546 P.2d 26 (1976), appeal dismissed, 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 67. This is generally known as the rational basis test. Under this standard, the propriety of any classification is for the legislature. It will not be invalidated by the courts unless it is "whimsical, capricious, arbitrary or without reason." *Landgraff v. Wagner, supra.*

In sharp contrast to the rational basis test is review under the strict scrutiny standard. Equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Under strict scrutiny analysis, a legislative classification will be upheld by the courts only if it is found to be necessary to promote a compelling or overriding state interest. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

It is well established that classifications based upon age are not subject to strict scrutiny. *Massachusetts Board of Retirement v. Murgia*, supra, (mandatory retirement of police officers of age 50); *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir.1979), cert. den., 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (mandatory retirement of judges upon first general election after age 70); *Johnson v. Lefkowitz*, 566 F.2d 866 (2nd Cir.1977), cert. den., 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (mandatory

**114**

retirement of tenured civil service employees at age 70).

It is further established that age classifications involving minors do not require review under the strict scrutiny standard. For example, in *Johnson v. City of Opelousas*, 488 F.Supp. 433 (W.D.La.1980), rev. on other grounds, 658 F.2d 1065 (5th Cir. 1981), an action was brought challenging the City of Opelousas' juvenile curfew ordinance. After discussing the appropriate standard of review the court held: "Unlike a classification based upon race, alienage and natural origin which are inherently suspect, age is not a suspect classification." 488 F.Supp. at 440. Similarly, in *Felix v. Milliken*, 463 F.Supp. 1360 (E.D. Mich.1978), actions were brought challenging a state constitutional amendment which raised the drinking age. After reviewing the history of equal protection analysis and various United States Supreme Court decisions involving minors, the court concluded:

"What the immediately foregoing cases clearly establish is that age, especially at the lower end of the spectrum, is not a suspect classification nor does it seem to possess any of the traits often associated with suspect classes." 463 F.Supp. at 1374.

See also *White Egret Condominium, Inc. v. Franklin*, 379 So.2d 346 (Fla.1979) (statute forbidding children under 12 from living on premises); *State v. Elam*, 302 N.C. 157, 273 S.E.2d 661 (1981) (statute prohibiting the taking of indecent liberties with a minor based upon age classifications); *People v. Dozier*, 72 App.Div.2d 478, 424 N.Y. S.2d 1010 (1980), aff'd, 52 N.Y.2d 781, 417 N.E.2d 1008, 436 N.Y.S.2d 620 (statutory rape law).

In the case of *Rohrabaugh v. Wagoner*, 274 Ind. 661, 413 N.E.2d 891 (1980), the Supreme Court of Indiana was faced with an equal protection challenge to an Indiana statute almost identical in operation to ours. The Indiana statute, in contrast to A.R.S. § 12–564(D), requires children between the ages of 6 and 21 to institute their medical malpractice claims within the same period of time as adults. The court held that the proper standard of review was the rational basis test. The court explained its decision as follows:

"The class identified by appellant as suspect is comprised of children from the ages of six through eighteen. Generally, defining a class by age does not call for strict judicial scrutiny. *Massachusetts Bd. of Retirement v. Murgia*, (1976) 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520. ... Illegitimate children are indeed a suspect class. *Levy v. Louisiana*, (1968) 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. Unlike illegitimacy, childhood is a stage out of which millions of persons inevitably pass in an unending flow, day after day. Children become adults and are empowered. The laws respecting children have in the main in recent years been based upon the premise that children are undergoing physical and psychological growth and during this process they are limited in their capacity for making those evaluations thought necessary to full participation in the political, economic, and social life of the community. As in the case of the elderly, the legal treatment of children has not been free of discrimination; however, the disparate treatment accorded children has been based in recent times upon knowledge of the process of growth, a process to which all human beings are subject. Consequently, we conclude that the class newly subject to this two year statute of limitation, children between the ages of six and twenty-one, is not suspect, thereby calling for strict judicial scrutiny. Rationality is therefore the standard by which to judge this classification." 413 N.E.2d at 893–94.

 We hold that the legally imposed status of minority is not a suspect classification meriting strict judicial scrutiny. Therefore, as to the age classification of A.R.S. § 12–564(D), the rational basis test is the appropriate standard of review. See *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977), (rational basis test is appropriate standard to review a claim that requiring the submission of claims to a

medical liability review panél and the abolition of the collateral source rule were unconstitutional); *Landgraff v. Wagner,* supra, (rational basis test is the appropriate standard by which to review Arizona medical malpractice statute of limitations).

Some members of the United States Supreme Court as well as some legal commentators contend that between the two extremes of equal protection scrutiny lies a middle tier of judicial review. *Felix v. Milliken,* supra, at 1368. Under an intermediate level of review, the courts demand that a classification bear a fair and substantial relation to the object of the legislation. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). The United States Supreme Court has invoked this substantial relationship test in reviewing classifications based upon gender and illegitimacy. See for example, *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), (illegitimacy); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), (gender). Appellant argues, in the alternative, that A.R.S. § 12–564(D) should be reviewed under the substantial relationship test. We do not agree. One cannot equate an age classification with a classification based upon gender and illegitimacy, and it is clear the United States Supreme Court has restricted its application of the substantial relationship test to cases involving classifications based upon gender and illegitimacy. The cases of *Eastin v. Broomfield,* supra, and *Landgraff v. Wagner,* supra, make it clear that the rational basis test is to be applied in testing the constitutionality of our medical malpractice statutes.

Appellant contends that A.R.S. § 12–564(D) does not even meet the rational basis test. We do not agree. A classic statement regarding statutes of limitation is found in *Chase Securities Corporation v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945):

"Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. [citation omitted.] They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control." 325 U.S. at 314, 65 S.Ct. at 1142.

In accordance with these principles, it has long been recognized that the tolling of minors' claims is not constitutionally required. As expressed in *Vance v. Vance,* 108 U.S. 514, 2 S.Ct. 854, 27 L.Ed. 808 (1883):

"It is urged that because the plaintiff in error was a minor when this law went into operation, it cannot affect her rights. But the constitution of the United States, to which appeal is made in this case, gives to minors no special rights beyond others, and it was within the legislative competency of the state of Louisiana to make exception in their favor or not. The exemptions from the operation of statutes of limitations, usually accorded to infants and married women, do not rest upon any general doctrine of the law that they cannot be subjected to their action, but in every instance upon express language in those statutes giving them time, after majority or after cessation of coverture, to assert their rights. No such provision is made here for such exception, but, in place of it, the legislature has made it the duty of the proper

officer of the court to act for them. It was also the duty of the under tutor appointed in this case.

"If the foregoing considerations be sound, they answer also effectually the suggestion in regard to the fourteenth amendment of the constitution of the United States.

Due to the problems of runaway children and incompetent parents and guardians, appellant argues a minor's action for medical malpractice should toll until a minor reaches majority. This argument was rejected in the case of *Pittman v. United States,* 341 F.2d 739 (9th Cir.1965), cert. den. 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351, which involved a challenge to the two-year statute of limitations contained in the Federal Tort Claims Act, 28 U.S.C. § 2401(b) as applied to the claims of minors. The court wrote:

"Further, plaintiff contends that roughly 40 per cent of the nation's population is under the disability of minority and that to deprive them of rights (because of the possibility that no adult will initiate proceedings) violates due process and equal protection when adults can go vindicate their own rights. We find no cases supporting such a proposition. Further, it may be assumed that it is a rather rare case with the government as an especially choice defendant where the minor's rights are not vindicated in a timely fashion. Plaintiff's argument might have more validity if there were any practical chance that 40, 30, 20, 10 or even five per cent of the infants' claims would be lost because of their minority. We would be blind if we didn't know that when there is money around that just about all of the claims will get to court through guardians ad litem." 341 F.2d at 741.

Several state courts have also held that the tolling of minor's claims until their majority is not constitutionally required despite their legal disability. See *Glass v. Benkert,* 18 Cal.App.3d 322, 95 Cal.Rptr. 735 (1971); *Shaw v. Zabel,* 267 Ore. 557, 517 P.2d 1187 (1974); *Gallegos v. Midvale City,* 27 Utah 2d 27, 492 P.2d 1335 (1972).

 In Arizona, there is a strong presumption which favors the constitutionality of the acts of the legislature. *Landgraff v. Wagner,* supra; *Arizona Podiatry Association v. Director of Insurance,* 101 Ariz. 544, 422 P.2d 108 (1966). In fact, before an Arizona court will declare a statute unconstitutional, it must be satisfied "beyond a reasonable doubt." *Landgraff v. Wagner,* supra; *Shaw v. State,* 8 Ariz.App. 447, 447 P.2d 262 (1968).

 When legislative classifications are scrutinized under the rational basis test, a "relatively relaxed standard" is used, reflecting the court's awareness that the drawing of lines is a peculiarly legislative task and an unavoidable one. *Massachusetts Board of Retirement v. Murgia,* supra. Perfection in making the necessary classifications is neither possible nor necessary. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Furthermore, where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation merely by tendering evidence in court that the legislature was mistaken. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

 In the instant case, appellant argues that the Arizona legislature was mistaken as to the need for the protections granted to the medical profession by A.R.S. § 12–564(D). However, the inherent defect in appellant's argument is that it is being made to the wrong branch of government. Under rational basis scrutiny, it is not up to the courts to decide on the wisdom and utility of legislation. *Minnesota v. Clover Leaf Creamery Co.,* supra. Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker. *Minnesota v. Clover Leaf Creamery Co.,* supra.

■ It has been held in this jurisdiction and elsewhere that a state legislature may constitutionally provide a separate statute of limitations applicable only to medical malpractice actions. *Landgraff v. Wagner,* supra; *Mishek v. Stanton,* 200 Colo. 514, 616 P.2d 135 (1980); *Hamby v. Neurological Associates, P.C.,* 243 Ga. 698, 256 S.E.2d 378 (1979); *Hohn v. Slate,* 48 N.C. App. 624, 269 S.E.2d 307 (1980); *Harrison v. Schrader,* 569 S.W.2d 822 (Tenn.1978); *Duffy v. King Chiropractic Clinic,* 17 Wash.App. 693, 565 P.2d 435 (1977). These cases provide that the rational basis test is the appropriate standard of review and that a rational basis exists for providing a separate statute of limitations for malpractice claims. As expressed by the court in *Landgraff v. Wagner,* supra:

> "We find that the importance to the public of good health care and the problems which arise when malpractice claims are brought against health providers after the passage of many years constitute sufficient reasons for the legislature to place them in a separate classification for this purpose. In finding a rational basis to the classification, we are supported by decisions from other states." 546 P.2d at 32.

The trial court here had before it and considered the minutes of a hearing held on January 19–20, 1979, by the Committee on Health of the Arizona House of Representatives. See *O'Malley Lumber Co. v. Riley,* 126 Ariz. 167, 613 P.2d 629 (App.1980). At this hearing, various oral arguments in support of a reduced statute of limitations on the claims of minors were heard. Throughout the written reports contained in the minutes of this hearing, various reasons are offered in support of a reduced tolling period for minors. The following is a summary of some of the considerations presented to the legislature in support of a reduced tolling period:

1. Prior to the enactment of A.R.S. § 12–624(D), primary practice physicians (obstetricians, pediatricians and family physicians) were tending to alter their practices to render less care in controversial or hazardous medical practice areas, thus reducing the availability and increasing the cost of medical care in connection with maternity cases, newborn infants and pediatric patients.

2. Bodily injury to or physical disability in the child is generally discoverable by the age of six.

3. Medical malpractice insurance carried at the time of the alleged act of malpractice often proved grossly insufficient when a medical malpractice action was brought some 20 years later.

4. Physicians or their estates sued for malpractice some 20 years after the alleged negligent act or omission were often unable to present an adequate defense due to the loss of medical records and essential witnesses.

5. A physician faced with a medical malpractice claim originating some 20 years earlier is unable to accurately and effectively portray the level of technology and standard of practice at the time of the alleged negligent act or omission, whereas a plaintiff's witnesses would tend to reflect the current level of technology.

6. Due to the extended period of exposure to medical malpractice claims, higher reserves had to be maintained by medical malpractice insurers, resulting in increased insurance rates in the high risk areas, driving up the cost of medical care.

■ It is clear from the foregoing that as required by *Minnesota v. Clover Leaf Creamery Co.,* supra, "there was evidence before the legislature reasonably supporting the classification." Expressed another way, as required by *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), the rationality of A.R.S. § 12–624(D) is "at least debatable" and therefore the statute meets the requirements of the rational basis test.

We find that A.R.S. § 12–564(D) satisfies the requirements of the rational basis test and does not violate the equal protection of law guaranteed by Article 2, § 13 of the Arizona Constitution and the Fourteenth

Amendment to the United States Constitution.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.