[Criminal No. 556.   Filed October 15, 1923.]

[219 Pac. 229.]

# GREGARIO HAZAS, Appellant, v. STATE, Respondent.

1. INDICTMENT AND INFORMATION — INFORMATION CHARGING HERDING
OF SHEEP ON CATTLE RANGE IN WORDS OF STATUTE HELD SUFFI-
CIENT.—An information charging defendant with herding sheep on
a cattle range in violation of Penal Code of 1913, section 641, as
amended by Session Laws of 1921, chapter 39, in the words of
such statute, *held* sufficient.

2. CONSTITUTIONAL LAW — STATUTE DENOUNCING HERDING OF SHEEP
ON CATTLE RANGE NOT VIOLATIVE OF DUE PROCESS OF LAW OR
EQUAL PROTECTION OF LAW CLAUSES.—Penal Code of 1913, section
641, as amended by Session Laws of 1921, chapter 39, de-
nouncing the herding of sheep on a cattle range, does not
deny equal protection of the law nor deprive any person of life,
liberty or property without due process of law, in violation of
Constitution, article 2, section 4, and Constitution of the United
States, Amendment 14, section 1.

3. CONSTITUTIONAL LAW—STATUTE DENOUNCING HERDING OF SHEEP
ON CATTLE RANGE HELD NOT VIOLATIVE OF CONSTITUTIONAL PROVI-
SION AGAINST SPECIAL PRIVILEGES.—Penal Code of 1913, section
641, as amended by Session Laws of 1921, chapter 39, denouncing
the herding of sheep on cattle range, *held* not violative of Consti-

---

Questions relating to stock trespassing or running at large, see notes
in 6 A. L. R. 228; 18 A. L. R. 69.

See 12 C. J., pp. 791, 887, 1127, 1185, 1284; 17 C. J., p. 264; 31
C. J., p. 708; 32 Cyc. 796; 36 Cyc. 992, 1014.

tution, article 2, section 13, prohibiting the enactment of a law granting special privileges.

4. Statutes—Denouncing Herding of Sheep on Cattle Range Held not Special Legislation Violating Constitution. — Penal Code of 1913, section 641, as amended by Session Laws of 1921, chapter 39, denouncing the herding of sheep on cattle range, *held* not special legislation in violation of Constitution, article 4, part 2, section 19, subdivisions 13, 20.

5. Statutes—Rule as to Class Legislation Stated.—Laws operating uniformly upon all of a class, when the classification has a basis founded in reason, are not obnoxious to the Constitution.

6. Constitutional Law—Legislative Judgment as to Classification Controlling Unless Palpably Arbitrary.—The legislative judgment as to classification is controlling upon the courts unless palpably arbitrary.

7. Public Lands—Essentials of Use Depriving Range of Character as Cattle Range Stated.—The use of a cattle range for the herding of sheep, to deprive it of its character as a cattle range within Penal Code of 1913, section 641, as amended by Session Laws of 1921, chapter 39, must have been acquiesced in without protest by the cattlemen, either expressly or by implication from joint use for a time long enough to amount to a custom.

8. Criminal Law—Finding on Conflicting Evidence Conclusive on Appeal.—Finding of court on conflicting evidence is conclusive on appeal.

9. Public Lands — Statute Denouncing Herding of Sheep Held Within State's Police Power.—Penal Code of 1913, section 641, as amended by Session Laws of 1921, chapter 39, denouncing the herding of sheep on a cattle range, *held* within the police power of the state.

10. Criminal Law—Legislature Presumed to have Found Facts on Which to Base Law as Police Measure in Absence of Evidence.—In an action involving the question of whether a statute was within the police power of the state, the Supreme Court, in the absence of the evidence, must assume that the legislature found all antecedent facts necessary upon which to base the law as a police measure.

11. Constitutional Law—Function of Courts in Passing on Validity of Law Stated.—A court cannot reject a law because it seems harsh in some respects or rests unequally upon the citizens, but is limited to an inquiry as to whether the legislature exceeded its authority in the enactment of the law.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

Mr. F. W. Perkins and Messrs. Morrison & Morrison, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Robert McMurchie, County Attorney, and Mr. A. H. Favour, of Counsel, for the State.

ROSS, J.—The defendant appeals from a conviction of violating the statute against herding sheep on a cattle range. The statute is section 641 of the Penal Code of 1913, as amended by chapter 39, Session Laws of 1921, and reads as follows:

"Any person owning or having charge of sheep or goats who herds, grazes or pastures the same or permits or suffers the same to be herded, grazed or pastured on any cattle range previously occupied by cattle or upon any range usually occupied by any cattle grower either as a spring, summer or winter range for his cattle, is guilty of a misdemeanor; but the priority of right between cattle and sheep owners to any range is determined by priority in the usual and customary use of such range either as a cattle or sheep range."

The defendant was prosecuted by information, and his first complaint is that the information did not state a public offense. It is practically in the language of the statute, and since the offense is purely a creature of the statute, we take it that if the legislature had the power to declare the commission of the acts alleged to constitute a crime, the information is sufficient. From the slight attention paid by counsel for defendant in their briefs and arguments to this feature of the case, we conclude their chief dependence for reversal is not that the facts set forth as constituting the offense are not well pleaded, but rather that in no view of them do they or could they by legislative act be made constitutionally to constitute a public offense.

The defense may be said to be twofold: (1) The unconstitutionality of the statute, and (2) on the merits of the case the evidence was insufficient to convict, it appearing therefrom that the range in question had been jointly used by cattle and sheep men so long a time as to constitute a mixed range and not an exclusive cattle range.

The constitutional provisions the statute is alleged to offend are that part of section 1, article 14, of the amendments of the federal Constitution reading as follows:

" . . . Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Sections 4 and 13 of article 2 of the state Constitution, reading as follows:

"Sec. 4. No person shall be deprived of life, liberty, or property without due process of law. . . .

"Sec. 13. No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations,"

And that part of section 19, part 2, article 4, reading as follows:

"No local or special laws shall be enacted in any of the following cases, that is to say: . . .

"13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises. . . .

"20. When a general law can be made applicable."

Section 641, as amended, is the same as the Idaho statute, except the change caused by the added words (in first line) "or goats" and the omitted word "possessory." So far as the question we are considering is concerned, the changes are wholly immaterial. The Idaho courts, as well as the federal Supreme Court,

have had presented to them, and have passed on, all the pertinent questions that defendant has asked us to pass upon, and adversely to defendant's contention. *State* v. *Horn,* 27 Idaho, 782, 152 Pac. 275; *State* v. *Omaechevviaria,* 27 Idaho, 797, 152 Pac. 280, affirmed *Omaechevarria* v. *State of Idaho,* 246 U. S. 343, 62 L. Ed. 763, 38 Sup. Ct. Rep. 323. The federal Supreme Court held (quoting from the syllabus):

"(1) That the police power of the state extends over the federal public domain, at least where there is no legislation by Congress on the subject.

"(2) That in segregating sheep from cattle the Idaho law was primarily designed to preserve the peace, and is not an unreasonable or arbitrary exercise of the police power.

"(3) That it does not discriminate arbitrarily and deny equal protection in giving preference to cattle owners in prior occupancy without giving a like preference to sheep owners in prior occupancy.

"(4) That, as a criminal law, it is not wanting in due process, in failing to provide for the ascertainment of the boundaries of a 'range' and for determining what length of time is necessary to constitute a prior occupation a 'usual' one within its meaning."

In the Horn case the court sets forth the contention of the defendant as follows:

"Counsel for respondent insist that this section is unconstitutional for the following reasons: First, that it is in direct contravention of section 1, article 1, of the Constitution of Idaho; second, that it is an encroachment upon the powers of the general government in that it attempts to give the state control over the public domain and the natural products thereof; third, it is not a proper police regulation, in that it has no real or substantial relation to the public health, public morals or public safety, arbitrarily interferes with a private business, and imposes unusual and unnecessary restrictions upon a lawful business; fourth, it is in direct violation of the fourteenth amendment of the Constitution of the United States, in that it is class legislation of the most vicious character, denying to the respondent equality of rights."

In the opinion following, the court resolved all of the above propositions against the defendant, stating:

"We have therefore reached the conclusion that section 6872, Revised Codes, is not in contravention of section 1, article 1, of the Constitution of this state; that it is not an encroachment upon the powers of the general government; that it is a proper police regulation enacted by the legislature for the express purpose of protecting the public peace, public safety and promoting the general welfare of the citizens, and does not arbitrarily interfere with a private business or impose upon such business unusual and unnecessary restrictions; and that it is not in direct violation of the Fourteenth Amendment to the Constitution of the United States."

We will content ourselves by merely giving the conclusions of the above courts on the questions decided and leave it to those who desire the reasons for such conclusions to go to such courts' opinions.

But it is contended by the learned counsel for defendant that neither of the above cases involved the question of the statute being violative of a constitutional provision like our subdivision 13 of section 19, part 2, article 4, of the Constitution, quoted above. We do not think this provision of the Constitution has anything to do with the question involved. It is not in conflict with the statute in question. The law is general in its terms and application, conferring the same rights and privileges upon all persons in the state engaged in the same business and dependent upon the public ranges for grazing for their herds, and it acts restrictively upon all such in the same manner. Laws operating uniformly upon all of a class, when the classification has a basis founded in reason, are not obnoxious to any constitutional provision with which we are familiar. Legislation of the kind is common and often necessary. The legislative judgment in all such matters, unless palpably arbitrary, is controlling upon the courts. *Coggins* v.

*Ely,* 23 Ariz. 155, 202 Pac. 391; *International Harvester Co.* v. *Missouri,* 234 U. S. 199, 52 L. R. A. (N. S.) 525, 58 L. Ed. 1276, 34 Sup. Ct. Rep. 859.

On the merits it is claimed by defendant that—

"The evidence shows that the range in question had been used in common for many years prior to the filing of the complaint in this case by both sheep and cattle men. In other words, there had been a joint use of these lands which were public domain, which defeats the claim of prosecution that the land was a cattle range, and destroys priority of right for the exclusive grazing of cattle."

The cattle range which defendant is charged with herding his sheep on is described in the information as the south half of section 13, township 9 north, range 2 west, Gila & Salt River Base Meridian, in Yavapai county. The evidence is to the effect that the area of country, of which this half section is a part, was first used as a cattle range in 1880 and was exclusively such until about 1900, when sheep growers began to herd their sheep around in the neighborhood and probably over the south half of section 13. The general language used by witnesses to describe the territory grazed over by sheep is such as to make it difficult from the cold record to know if sheep were ever herded on said one-half section before the date (December 25, 1921) charged in the information. That they have been herded in and about Sheep Mountain, Silver Mountain, Briggs, Tussock Springs and Castle Creek—landmarks not far from the *locus in quo*—since 1900 is doubtless true. But that is not sufficient, as we read the law, to deprive such range of its character as a cattle range. The common use, to effect that, must have been acquiesced in without protest by the cattlemen, either expressly or by implication from joint use, for a time long enough to amount to a custom. This is the construction placed upon the statute by the Idaho court

in *State* v. *Butterfield,* 30 Idaho, 415, 165 Pac. 218. It is there said:

"If cattlemen and sheepmen jointly use the range in the usual and customary manner of using it for a period of time long enough to create a custom, if the cattlemen know of such joint use and do not protest against such use of the range for sheep, nor claim a prior and exclusive right to the same, then the herding or grazing of sheep upon such range is not unlawful, even though it be a fact that before such customary joint use for both sheep and cattle, the land was used exclusively for cattle."

On the point as to whether the cattlemen protested against the use of such range by sheepmen, there is a conflict in the testimony; the former swearing that they did protest, whereas the latter say they had no knowledge of any protest. In this state of the evidence it became a question for the jury or court. The case was tried by the court without a jury and he must have found the issue in favor of the prosecution, and his finding is binding upon us.

The right of the legislature to enact the statute in question is referable to the police power of the state. Its purpose was to promote peace in the use of the public domain by the sheep and cattle growers of the state, and thereby encourage these industries and add to the general welfare of all. If it prevents, or tends to prevent, quarrels, disputes and conflicts between the two over the use of the ranges of the state, the subject is certainly a proper one for legislative cognizance. *Bacon* v. *Walker,* 204 U. S. 311, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289 (see, also, Rose's U. S. Notes).

But counsel for defendant say that there has never been any conflict in this state between sheepmen and cattlemen over the use of the range; that they have always lived amicably and in peace with each other and that what they have done in the past they will

continue to do in the future. This pacific attitude, they say, is without the range of the police power, and being so, and in that regard differing from the relations existing between sheep and cattle men in Idaho, the decisions of the latter state should not be followed by this court. The record does not disclose whether what counsel assert is true or not. We think the legislature must have found the facts to be against that contention and have determined it was necessary for the peace and public welfare of the people of the state that it regulate the uses of the ranges as between the sheep growers and the cattle growers; and in doing so we will assume that the legislature found all antecedent facts necessary upon which to base the law as a police measure. The rule in that regard is stated by Mr. Chief Justice BRUCE in *State* v. *Turner,* 37 N. D. 635, 164 N. W. 924, as follows:

"With this judgment and determination the courts cannot interfere. The rule, indeed, seems to be quite generally established that:

" 'If an act of the legislature would be valid only in the event that certain circumstances existed, it will be presumed that all such circumstances did exist. If it was required that the legislature should have evidence of particular facts in order properly to pass a statute, it is presumed that such evidence was actually and properly before the legislative body, and that it acted on a full knowledge of the facts.' 6 R. C. L. 102, 118; *Sweet* v. *Rechel,* 159 U. S. 380, 40 L. Ed. 188, 16 Sup. Ct. Rep. 43; *State* v. *Northern Pac. R. Co.,* 19 N. D. 45, 25 L. R. A. (N. S.) 1001, 120 N. W. 869; *State* v. *Armour & Co.,* 27 N. D. 177, 203, 204, Ann. Cas. 1916D, 1149, L. R. A. 1916E, 381, 145 N. W. 1033; *Armour & Co.* v. *North Dakota,* 240 U. S. 510, 60 L. Ed. 771, Ann. Cas. 1916D, 548, 36 Sup. Ct. Rep. 440."

It is for the legislature to pass laws and to determine the general policy in that regard. We cannot reject a law because it may seem harsh in some respects or

may rest unequally upon the citizens. Our power is limited to an inquiry as to whether the legislature has exceeded its authority in the enactment of the law. As is said by the Supreme Court of the United States, in *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389, L. R. A. 1915C, 1189, 58 L. Ed. 1011, 34 Sup. Ct. Rep. 612:

"The scope of judicial inquiry in deciding the question of power is not to be confused with the scope of legislative considerations in dealing with the matter of policy. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature."

Finding no reversible error in the trial of this case, and having come to the conclusion that the law is not violative of any constitutional provision, either state or federal, the judgment of conviction is affirmed.

McALISTER, C. J., and LYMAN, J., concur.