48 P.3d 479

Doris HARVEST, on behalf of herself as mother and Reginald Lee Moore, the father of the Decedent, Baby Doe HARVEST, Plaintiff–Appellant,

v.

Michael T. CRAIG, M.D. and Jane Doe Craig, husband and wife; Medical Environments, Inc., a foreign corporation, d/b/a Bullhead Community Hospital, Defendants–Appellees.

No. 1 CA–CV 01–0262.

Court of Appeals of Arizona, Division 1, Department A.

May 30, 2002.

Law Offices of David W. Hume By David W. Hume, Phoenix, Attorneys for Plaintiff–Appellant.

Campbell, Yost, Hergenroether, Clare, and Norell, P.C. By Stephen C. Yost, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

LANKFORD, Judge.

¶ 1 Doris Harvest, a patient of the defendants, challenges the constitutionality of a statute that requires proof by clear and convincing evidence in certain medical mal-

practice cases.[1] The defendants argue that any error in the burden of proof was harmless.[2] The patient also challenges the introduction of psychiatric evidence. We hold that the statute is constitutional and that the trial court did not abuse its discretion in admitting the evidence.

¶ 2 None of the defendants were the patient's usual health care providers. During her third trimester of pregnancy, she experienced contractions and vaginal bleeding. An ambulance brought her to the emergency room of Bullhead Community Hospital ("BCH"), where Dr. Michael T. Craig examined her. During this examination, the patient did not communicate various risk factors for placental abruption,[3] including smoking and drinking during her pregnancy, two prior precipitous deliveries, and two abortions.

¶ 3 Dr. Craig telephoned the patient's obstetrician, Dr. Kirsten Rojas, in Las Vegas. Dr. Craig related that the patient was in the emergency room, was having contractions, and had passed some blood. Dr. Craig also conveyed that the patient was stable, that all vital signs and fetal heart tones were in the normal range, and that BCH had no obstetrical department. Dr. Craig raised the possibility of sending the patient home, but Dr. Rojas instructed him to send her to Valley Hospital in Las Vegas for observation. Dr. Rojas provided no treatment or transfer directions. Dr. Rojas then transmitted a pre-term labor order to Valley Hospital for a stat ultrasound to rule out abruption, a possibility she had not discussed with Dr. Craig. At that time, both physicians were unaware of the patient's psychiatric history.

¶ 4 The patient traveled to Valley Hospital by car with her boyfriend. She later testified that she had experienced severe contractions while en route. Upon arrival at Valley Hospital, she repeatedly refused to consent to any intervention, including an emergency caesarean section. Ultimately, she delivered a stillborn fetus.

¶ 5 The patient filed this wrongful death action. The superior court granted summary judgment for Defendants on the ground that the patient had failed to prove her claim by the clear and convincing evidence standard required by A.R.S. § 32–1473. This court reversed because Defendants had failed to establish facts showing that the statute's enhanced burden of proof applied. *Harvest v. Craig*, 195 Ariz. 521, 526, ¶ 24, 990 P.2d 1080, 1085 (App.1999).

---

1. The statute, Ariz.Rev.Stat. ("A.R.S.") § 32–1473 (Supp.2001), provides:
   A. Unless the elements of proof contained in § 12–563 are established by clear and convincing evidence, a physician licensed to practice pursuant to this chapter or chapter 17 of this title is not liable to the pregnant female patient, the child or children delivered, or their families for medical malpractice related to labor or delivery rendered on an emergency basis if the patient was not previously treated for the pregnancy by the physician, by a physician in a group practice with the physician or by a physician, physician assistant or nurse midwife with whom the physician has an agreement to attend the labor and delivery of the patient.
   B. Unless the elements of proof contained in § 12–563 are established regarding the acts or omissions of a licensed health care facility or its employees in cases covered by the provisions of subsection A of this section by clear and convincing evidence, the health care facility is not liable to the female patient, the child or children delivered or their families for medical malpractice related to labor or delivery.
   C. This section does not apply to treatment rendered in connection with labor and delivery if the patient has been seen regularly by or under the direction of a licensed health care provider or a licensed physician from whom the patient's medical information is reasonably available to the physicians attending the patient during labor and delivery.
   D. For the purpose of this section, "emergency" means when labor has begun or a condition exists requiring the delivery of the child or children.

2. The defendants erroneously raised the harmless error issue by "cross-appeal." Their argument does not qualify as a cross-appeal. Not only does the record contain no notice of cross-appeal, *see* ARCAP 8(a), the defendants are not seeking to enlarge the relief they received from the judgment or lessen the patient's rights. *See* ARCAP 13(b)(3). Further, because our decision renders the harmless error issue moot, we do not address it.

3. Placental abruption, the premature separation of the placenta from the uterus, is a possible cause of pre-term labor, and can place both mother and fetus at serious risk. F. Gary Cunningham et al., *Williams Obstetrics* 826 (19th ed.1993).

¶ 6 On remand, the patient sought to exclude her psychiatric history. The superior court admitted the evidence at trial. The court determined that the statutory requirements for the heightened burden of proof were satisfied by the expanded trial record.[4] The court therefore instructed the jury that the patient bore the burden of proving her wrongful death claim by clear and convincing evidence. After the jury returned a unanimous defense verdict, the court entered judgment and denied the patient's motion for new trial. She timely appealed.

¶ 7 We review *de novo* the trial court's ruling on the statute's constitutionality. *Graville v. Dodge*, 195 Ariz. 119, 123, ¶ 17, 985 P.2d 604, 608 (App.1999). We presume the statute is constitutional, and the party challenging the statute bears a heavy burden to demonstrate its unconstitutionality. *Chevron Chem. Co. v.Super. Ct.*, 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982); *Martin v. Reinstein*, 195 Ariz. 293, 302, 987 P.2d 779, 788 (App.1999); *3613 Ltd. v. Dep't of Liquor Licenses & Control*, 194 Ariz. 178, 182, ¶ 17, 978 P.2d 1282, 1286 (App.1999).

¶ 8 The patient first argues that A.R.S. § 32–1473 violates the anti-abrogation clause of the Arizona Constitution. Article 18, Section 6 of the Arizona Constitution states: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." The patient contends that the statute abrogated her negligence claim by adopting the "clear and convincing" standard of proof.

¶ 9 The statute does not violate the anti-abrogation clause. The Arizona Constitution bars the legislature from abolishing a common law right of action for money damages.[5] A statute that impinges upon a recognized right of action must be closely examined to determine whether it merely regulates the action or effectively abolishes it. *Ruth v. Indus. Comm'n*, 107 Ariz. 572, 575, 490 P.2d 828, 831 (1971). We hold that A.R.S. § 32–1473 regulates rather than abolishes the right of action. The statute neither prevents plaintiffs from initiating an action nor bars them from obtaining damages. Instead, it defines the degree of proof needed for success.

¶ 10 Establishing the standard of proof is permissible regulation. As the Arizona Supreme Court has explained: "It is one thing to hold that the right to bring a cause of action is guaranteed in the constitution, free from legislative control, but entirely different to hold that the constitution also requires that we continue to follow the same rules of pleading, procedure and evidence that existed in 1912." *Kenyon v. Hammer*, 142 Ariz. 69, 83, 688 P.2d 961, 975 (1984) (citations omitted). By that measure, the abolition of the collateral source rule does not violate the anti-abrogation clause. *Eastin v. Broomfield*, 116 Ariz. 576, 584–85, 570 P.2d 744, 752–53 (1977). Similarly, the adoption of the clear and convincing standard of proof affects how the cause of action is litigated but does not abrogate it.

¶ 11 The patient next argues that A.R.S. § 32–1473 violates the equal protection clause of the Arizona Constitution, which provides: "No law shall be enacted granting to any citizen . . . privileges or immunities which, upon the same terms, shall not equally belong to all citizens. . . ." Ariz. Const. art. 2, § 13. This provision requires only that the State classify reasonably and afford equal treatment to similarly situated persons. *Shelby Sch. v. Ariz. State Bd. of Educ.*, 192 Ariz. 156, 169, ¶ 65, 962 P.2d 230, 243 (App. 1998). It does "not require things which are different in fact or opinion to be treated in law as though they were the same." *Salt River Pima Maricopa Indian Cmty. Sch. v.*

---

4. The patient does not contest this point on appeal.

5. We assume without deciding that the statutory wrongful death action is protected by the constitution. *See Summerfield v.Super. Ct.*, 144 Ariz. 467, 470–74, 698 P.2d 712, 715–19 (1985). *But see Halenar v.Super. Ct.*, 109 Ariz. 27, 29, 504 P.2d 928, 930 (1972). *See also Davis v. Dow Chem. Corp.*, 819 F.2d 231, 234–35 (9th Cir.1987) (discussing *Halenar's* questionable vitality in light of *Summerfield*). *See generally Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 343–44, 861 P.2d 625, 628–29 (1993) (constitution protects rights of action that existed at statehood or judicially evolved thereafter).

*State,* 200 Ariz. 108, 111, ¶ 9, 23 P.3d 103, 106 (App.2001) (quoting *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

■ ¶ 12 The patient contends that we must subject A.R.S. § 32–1473 to a strict scrutiny analysis because it implicates a fundamental right to sue for medical malpractice. The statute affects the standard of proof and does not bar a right of action. *See Kenyon,* 142 Ariz. at 83, 688 P.2d at 975 (rational basis test applies to portions of statute not affecting the "essence" of the fundamental right to bring a lawsuit); *see also Eastin,* 116 Ariz. at 585, 570 P.2d at 753 (same). Accordingly, the rational basis test applies.

■ ¶ 13 The statute satisfies the rational basis test. In *Findley v. Industrial Commission of Arizona,* we applied this test under similar circumstances. 135 Ariz. 273, 660 P.2d 874 (App.1983). The petitioner advanced an equal protection challenge to a statute which raised the standard of proof for proximate cause from "a cause" to "a substantial contributing cause" in workers' compensation cases involving mental injury or illness. *Id.* at 276, 660 P.2d at 877 (citing A.R.S. § 23–1043.01(B)(1995)). We rejected the contention that the statute unconstitutionally differentiated between workers with mental injuries and all other injured workers. The statute was constitutional because all persons within the class were treated alike and the classification was reasonable. *Id.* The statute accorded equal treatment to each member of the class, those with stress-related mental injuries or illnesses. *Id.* Moreover, in light of the difficulty in proving a causal connection between mental illness and an industrial event, the legislature could reasonably classify victims of such injuries differently and require more stringent proof. *Id.*

¶ 14 Likewise, all members of this patient's class-pregnant women who seek services from a physician for the first time and on an emergency basis—are subjected to the same burden of proof under A.R.S. § 32–1473. The statute also furthers the legitimate government interest in providing emergency services in less populated areas of the state.

Private hospitals like BCH must provide services to any patient who visits their emergency departments. *See Thompson v. Sun City Comm. Hosp.,* 141 Ariz. 597, 602–03, 688 P.2d 605, 610–11 (1984); *Guerrero v. Copper Queen Hosp.,* 112 Ariz. 104, 106, 537 P.2d 1329, 1331 (1975). A statute raising the standard of proof in high-stakes obstetrical emergencies for which an emergency room physician has no readily available information might preserve medical services in hospitals which cannot provide obstectrical departments. In addition, the statute rationally furthers the legitimate goal of successful deliveries by encouraging pregnant women to seek prenatal care. We hold that A.R.S. § 32–1473 has a rational basis.

■ ¶ 15 The patient further contends that A.R.S. § 32–1473 violates the prohibition against special laws contained in Article 4, Section 19 of the Arizona Constitution, which provides:

> No local or special laws shall be enacted in any of the following cases, that is to say:
>
> * * *
>
> 3. Changing rules of evidence.
>
> * * *
>
> 5. Regulating the practice of courts of justice.
> 6. Limitation of civil actions. . . .
>
> * * *
>
> 13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises.

■ ¶ 16 Statutes qualify as permissible general laws, not special laws, if they operate "uniformly upon all of a class, when the classification has a basis founded in reason. . . ." *Eastin,* 116 Ariz. at 584, 570 P.2d at 752 (quoting *Hazas v. State,* 25 Ariz. 453, 458, 219 P. 229, 231 (1923)). "The legislative judgment in all such matters, unless palpably arbitrary, is controlling upon the courts." *Id.* Thus, our supreme court rejected a challenge to a statute eliminating the collateral source rule in medical malpractice actions

because it operated alike upon all within the class. *Id.*

¶ 17 Although A.R.S. § 32–1473 applies to a more narrow class, it too operates alike upon all who fall within it. The statute is not "palpably arbitrary" because it rationally furthers the public policies identified above. We therefore hold that A.R.S. § 32–1473 does not violate Article 4, Section 19 of the Arizona Constitution.

¶ 18 Finally, the patient contests the admission of evidence of her psychiatric history of schizophrenia and/or bipolar disorder as unduly prejudicial and therefore inadmissible under Rule 403 of the Arizona Rules of Evidence.[6] This evidence included the patient's medical records and testimony by Dr. Irwin Finkelstein, a defense expert. Dr. Finkelstein conducted an independent medical examination and reviewed the patient's records before and after her visit to BCH.

¶ 19 We uphold evidentiary rulings unless they result from a clear abuse of discretion and prejudice results. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996). Moreover, only a manifest abuse of discretion justifies reversal of the trial court's weighing of probative value and prejudicial effect under Rule 403. *Zuern v. Ford Motor Co.*, 188 Ariz. 486, 492, 937 P.2d 676, 682 (App.1996).

¶ 20 Evidence of a witness's mental condition may be admitted for impeachment purposes if the mental condition may have affected the truth of the testimony. *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982). The proponent must show how the condition affected the witness's ability to observe and relate the matters to which he or she testified. *Id.* Therefore, the condition must affect the witness at the time of the matter testified to, while the witness is on the stand, or in the interim. *Id.*

¶ 21 The record in this case contains sufficient evidence of the impact of this patient's illnesses upon her ability to perceive and communicate. Dr. Finkelstein opined that she was "consistently ill" because she did not take medication to treat her schizophrenia. The patient's records established a history of involuntary hospitalizations, with diagnoses of schizophrenia and/or bipolar disorder, including auditory hallucinations, both before and after her visit to BCH. During one such hospitalization, about two weeks before her May 30, 1996 deposition, she was psychotic and referred to herself as a "global alien with telepathic powers." The records also indicate that the patient's psychosis tended to express itself more acutely in times of unusual stress, including when she lacked shelter, suffered a head injury, and engaged in litigation.

¶ 22 Based upon this information, Dr. Finkelstein concluded that the patient's mental illness affected her ability to perceive and communicate facts and events to her health care providers on the day of the emergency room visit. Sufficient foundation supported admission of the psychiatric evidence, and we cannot say that its prejudicial effect so clearly and substantially outweighed its probative value that the superior court's balancing of these factors was an abuse of discretion.[7]

¶ 23 The judgment is affirmed.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and EDWARD C. VOSS, Judge.

---

6. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

7. In *State v. Dumaine*, the Arizona Supreme Court upheld the exclusion of a detective's psychiatric records. Unlike the case before us, there was no foundation as to how the detective's problems affected his ability to observe and communicate. 162 Ariz. 392, 406, 783 P.2d 1184, 1198 (1989). In fact, the evidence was that the detective's condition did *not* affect his capacity to perceive, recall or relate the events. *Id.* Moreover, the court in *Dumaine* upheld the trial court's exercise of discretion, as we do here.